743 So.2d 181 (1999)
Danatus Norman KING
v.
PHELPS DUNBAR, L.L.P., Danny Shaw, Harry Rosenberg and Roy Cheatwood.
No. 98-C-1805.
Supreme Court of Louisiana.
June 4, 1999.
Rehearing Denied July 2, 1999.
*183 Danatus Norman King, Ike Spears, Sonja Melina Spears, Spears & Spears, New Orleans, Counsel for Applicant.
Ellis Baker Murov, Robert Emmett Kerrigan, Jr., Charles Frederick Seeman, II, Deutsch, Kerrigan & Stiles, New Orleans, Harry Alston Johnson, III, Counsel for Respondent.
JOHNSON, Justice.[*]
We granted certiorari in this case to review the Court of Appeal's decision dismissing Plaintiffs claims for racial discrimination, intentional infliction of emotional distress, loss of earning capacity, and damage to reputation. Plaintiff contends the Court of Appeal erred in dismissing his claims against the individual defendants, Roy Cheatwood, Harry Rosenberg, and Danny Shaw, on summary judgment; and in dismissing his claims for racial discrimination and intentional infliction of emotional distress against Phelps Dunbar, L.L.P. and the individual defendants on an exception of prescription. Because we conclude the exception of prescription should have been referred to the merits, we vacate that portion of the Court of Appeal's decision and remand the matter for trial on the merits. The summary judgment dismissal of the claims against the individual defendants is affirmed.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Danatus Norman King is an African-American attorney who was employed by Defendant, Phelps Dunbar, L.L.P., as an associate in the commercial litigation section from 1990 to 1995. While in the commercial litigation section, he was supervised by the individual defendants, Roy Cheatwood, Harry Rosenberg, and Danny Shaw. Mr. King alleges that he was assigned to work on the files of Defendant's African-American clients and that he was asked to transfer to the tort and insurance section of the firm because of his race. According to Mr. King's pleadings, most cases in the tort and insurance section were tried before predominately African-American jurors in the Civil District Court for Orleans Parish and Defendant wanted him to be the firm's black face in that venue. He also alleges that the transfer request was prompted by pressure on the Defendant from the New Orleans Aviation Board's general counsel to hire African-American attorneys for the tort and insurance section and have those attorneys work Aviation Board files. Mr. King claims that his refusal to be transferred led to a hostile work environment and retaliatory tactics such as unwarranted criticism of his work, refusal to grant work assignments to him, and accusations of his being too sensitive to racial matters. Mr. King alleges that the refusal to grant work assignments caused him to beg for assignments from other associates, even junior associates, and had an adverse effect upon his income because he was unable to bill hours.
*184 On January 20, 1995, Mr. King underwent an associate evaluation with two of the three individual defendants, Roy Cheatwood and Harry Rosenberg. During this evaluation, he was informed that his chances of becoming a partner were nonexistent and that he should consider a career change. Mr. King was not terminated following this evaluation. He remained employed as an associate by the Defendant, and he alleges that the hostility of his work environment increased. He contends that the allegedly hostile work environment became unbearable to him and on March 10, 1995 he tendered his resignation to be effective March 24, 1995. The firm accepted and confirmed his resignation in a letter signed by Roy Cheatwood, a general partner and one of the individual defendants.
Mr. King filed the instant action on March 11, 1996 claiming racial discrimination under La.Rev.Stat. Ann. 23:1006 and La.Rev.Stat. Ann. 51:2231 et seq., intentional infliction of emotional distress ("IIED"), and loss of earning capacity and damage to reputation. Mr. King named as defendants, Phelps Dunbar, L.L.P. ("Phelps"), and the three partners, Roy Cheatwood, Harry Rosenberg, and Danny Shaw. The trial court rendered summary judgment dismissing Mr. King's claims against the individual defendants and granted the exception of prescription dismissing his claims against Phelps and the individual defendants.
On appeal, the Fourth Circuit found no error in the summary judgment dismissal of the claims against the individual defendants. The Court determined that the individual defendants were not employers as that term is used in Louisiana employment discrimination law and that as a matter of law the plaintiff had failed to allege facts to support a claim for intentional infliction of severe emotional distress. On the issue of prescription, the Court found that since Mr. King acknowledged he was constructively discharged January 20, 1995, prescription commenced on that date.[1] The Court went on to conclude that the delictual nature of plaintiff's claims subjected them to a one year prescriptive period. Therefore, Mr. King's claims were prescribed when the suit was filed and the trial court was correct in granting defendants' exception of prescription. King v. Phelps Dunbar, 97-2519 (La.App. 4th Cir. 6/3/98), 716 So.2d 104. We granted Mr. King's writ application to review the correctness of these determinations. King v. Phelps Dunbar, 98-1805 (La.11/25/98), 729 So.2d 579.

DISCUSSION
Summary judgment procedure is favored in Louisiana. La.Code Civ. Proc. art. 966(A)(1). A motion for summary judgment which shows that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law shall be granted. La.Code Civ. Proc. art. 966(C)(1). An issue is genuine if reasonable persons could disagree. Smith v. Our Lady of the Lake Hospital, 93-2512 (La.7/15/94), 639 So.2d 730, 751. "If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue." Id.
The individual defendants filed a motion for summary judgment on the issue of whether or not they are employers as that term is defined for the purpose of employment discrimination law under the provisions of former La.Rev.Stat. Ann. 23:1006. Employment discrimination on account of race, color, religion, sex, disability or national origin is presently governed by La.Rev.Stat. Ann. 23:331 to 23:334, and appellate courts are bound to adjudge a case before it in accordance with the law existing at the time of its decision. Segura *185 v. Frank, 93-1271 (La.1/14/94), 630 So.2d 714, 725, citing Dripps v. Dripps, 366 So.2d 544 (La.1978). Where the law has changed during the pendency of a suit and retroactive application of the new law is permissible, the new law applies on appeal. Id. The determination of whether a new law is given retroactive application is governed by La. Civ.Code Ann. art. 6, which provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.[2]
The application of La. Civ.Code Ann. art. 6 involves a two-part inquiry. First, we determine whether the legislature expressed its intent regarding retrospective or prospective application in the enactment. If the legislature did express its intent, our inquiry is complete. If not, we must determine whether the enactment is substantive, procedural, or interpretive. Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La. 1992). La.Rev.Stat. Ann. 23:1006 to 23:1008, which governed discrimination in employment on account of race, color, religion, sex, disability, or national origin, were repealed in their entirety by Section 4 of Acts 1997, No. 1409. Section 1 of Acts 1997, No. 1409 enacted Chapter 3-A of Title 23 relative to employment discrimination and consolidated the provisions of law governing employment discrimination into one chapter. The provisions of Chapter 3-A of Title 23 create and define the rights and duties of employers and employees relative to discrimination in the workplace. Therefore, the enactment of these provisions by Acts 1997, No. 1409 is substantive and cannot be retroactively applied. Since plaintiff's suit was filed March 11, 1996, prior to the August 1, 1997 effective date of Acts 1997, No. 1409, the provisions of former La.Rev.Stat. Ann. 23:1006 govern the adjudication of this appeal.
For the purpose of employment discrimination law, La.Rev.Stat. Ann. 23:1006 utilized the definition of employer given in La.Rev.Stat. Ann. 51:2232(4) which provides: "`[e]mployer' means ... any person employing eight or more persons within the state, or any person acting as an agent of an employer, directly or indirectly." Mr. King does not allege that the individual defendants are his employers, conversely, he states that Phelps Dunbar, L.L.P. is an employer within the meaning of La.Rev.Stat. Ann. 23:1006 and 51:2231 et seq. and that he was employed by Phelps. Further, the individual defendants submitted affidavits that they do not employ anyone. Based on this evidence, reasonable persons could only conclude that the individual defendants are not employers within the meaning of La.Rev.Stat. Ann. 51:2232(4). Therefore, the Court of Appeal was correct in affirming the summary judgment dismissal of the individual defendants on the issue of whether they were employers under the provisions of former La.Rev.Stat. Ann. 23:1006.

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
In White v. Monsanto, 585 So.2d 1205 (La.1991), we recognized a cause of action for emotional distress intentionally caused by extreme and outrageous conduct. A plaintiff seeking to recover for intentional infliction of emotional distress must establish:
(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*186 The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.
White v. Monsanto, 585 So.2d 1205, 1209.
The Court of Appeal determined that "[a]s a matter of law, none of the facts attested to by the plaintiff rise to the level of outrageous conduct necessary to recover for a claim of intentional infliction of severe emotional distress." King v. Phelps Dunbar, 97-2519, p. 7 (La.App. 4th Cir. 6/3/98), 716 So.2d 104, 108. On a motion for summary judgment, if the movant does not bear the burden of proof at trial, he simply has to point out to the court that there is an absence of factual support for an essential element of the adverse party's claim. La.Code Civ. Proc. art. 966(C)(2). If the adverse party fails to produce factual support to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact and summary judgment is proper. La. Code Civ. Proc. art. 966(C)(2). The plaintiff had the burden of proving his claim for intentional infliction of emotional distress when the issue was raised. He failed to offer any persuasive evidence in opposition to defendants' motion for summary judgment. Accordingly, we affirm the Court of Appeal's decision that the plaintiff has failed to establish a claim for intentional infliction of emotional distress against the individual defendants.

LOSS OF EARNING CAPACITY AND DAMAGE TO REPUTATION
The Court of Appeal found that there was an absence of factual support for Plaintiff's claims for loss of earning capacity and damage to his reputation. Since the Plaintiff would have the burden of proving these issues at trial, the Court of Appeal held that "plaintiff has failed to sustain his summary judgment burden on this issue." King, 716 So.2d 104, 108.
A claim for damage to reputation falls under an action for defamation. An action in defamation requires proof of: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. Trentecosta v. Beck, 96-2388 (La.10/21/97), 703 So.2d 552, 559. Plaintiff has not produced factual support of these requisite elements. Further, loss of earning capacity is an element of damages recoverable in action for employment discrimination. Since the action for employment discrimination cannot be maintained for the individual defendants, plaintiff cannot recover damages for loss of earning capacity. Therefore, the Court of Appeal's decision dismissing these claims against the individual defendants on summary judgment is affirmed.

PRESCRIPTION
The sole issue left for our consideration is whether Mr. King's action for racial discrimination, in violation of La.Rev.Stat. Ann. 23:1006 and La.Rev.Stat. Ann. 51:2231 et seq., and intentional infliction of emotional distress has prescribed. Prior to the 1997 revision, La.Rev.Stat. Ann. 23:1006 in pertinent part provided that:
B. It shall be unlawful discrimination in employment for an employer to:
(1) Intentionally fail or refuse to hire, refer, discharge, or to otherwise intentionally discriminate against or in favor of an individual with respect to compensation, terms, conditions, or privileges of employment, because of race, color, religion, sex, or national origin; or
(2) Intentionally limit, segregate, or classify an employee in a way which *187 would deprive an individual of employment opportunities, give a favor or advantage to one individual over another, or otherwise adversely or favorably affect the status of an employee because of race, color, religion, sex, or national origin. Provided, however, that nothing contained herein shall be construed so as to create a cause of action against any employer for employment practices pursuant to any affirmative action plan.
* * * * * *
D. A plaintiff who has a cause of action against an employer for discrimination in employment may file a suit in the district court for the parish in which the alleged discrimination occurred seeking general or special compensatory damages, back pay, restoration of employment, related benefits, reasonable attorney's fees, and court costs.
La.Rev.Stat. Ann. 51:2231 et seq. provides for the execution of federal anti-discrimination laws in the State of Louisiana and creates the Louisiana Commission on Human Rights ("Commission"). The Commission has the power to adjudicate claims of employment discrimination pursuant to La.Rev.Stat. Ann. 51:2231(C) and 51:2257. An individual alleging employment discrimination under former La.Rev.Stat. Ann. 23:1006 may file a written complaint with the Commission and have the allegations investigated and resolved by the Commission. The record does not indicate that any such complaint was filed by the plaintiff in this matter. Accordingly, the provisions of La.Rev.Stat. Ann. 51:2231 et seq. will not be applied to Plaintiff's claims.[3]
Because La.Rev.Stat. Ann. 23:1006 is similar in scope to the federal prohibition against discrimination, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., Louisiana courts have looked to federal jurisprudence to interpret Louisiana discrimination laws. Bustamento v. Tucker, 607 So.2d 532, 538 n. 6 (La.1992). The United States Fifth Circuit has determined that claims under Louisiana's antidiscrimination statute are subject to the one-year prescriptive period found in La. Civ.Code art. 3492. Williams v. Conoco, Inc., 860 F.2d 1306 (5th Cir.1988). Louisiana courts have consistently applied this one-year prescriptive period to claims brought under La.Rev.Stat. Ann. 23:1006. See Brunett v. Dept. Wildlife and Fisheries, 96 0535 (La.App. 1st Cir. 12/20/96), 685 So.2d 618; Harris v. Home Savings & Loan, 95-223 (La.App. 3rd Cir. 7/27/95), 663 So.2d 92; Winbush v. Normal Life of Louisiana, Inc., 599 So.2d 489 (La.App. 3rd Cir.1992). This one-year prescriptive period commences to run from the day injury or damage is sustained. La. Civ.Code art. 3492. Claims for intentional infliction of emotional distress are also governed by the one-year prescriptive period for delictual actions in La. Civ.Code Ann. art. 3492.[4]
We have previously held that "prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished; thus, when there are two possible constructions, that which favors maintaining, as opposed *188 to barring, an action should be adopted." Bustamento v. Tucker, 607 So.2d 532, 537 (La.1992); Lima v. Schmidt, 595 So.2d 624, 629 (La.1992); Foster v. Breaux, 263 La. 1112, 270 So.2d 526 (1972). Plaintiff alleges that following his unfavorable performance review, he was subjected to a series of discriminatory violations, and that the increasingly hostile work environment became unbearable at the point when he was forced to resign; as such, prescription commenced to run on March 24, 1995, the effective date of his resignation, and this action was filed within one-year of that date. In Bustamento, we noted that in order to determine when prescription commences to run, it is necessary to analyze the nature of plaintiffs cause of action. 607 So.2d 532, 538. Accordingly, we turn our attention to the jurisprudence interpreting race-based employment discrimination.
Under federal law, the plaintiff bears the burden of proving that the defendant intentionally discriminated against him or her on the basis of race. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). First, a plaintiff must establish a prima facie case of racial discrimination. Once a prima facie case is established, a presumption is created that the employer has unlawfully discriminated against the employee and the burden shifts to the employer to prove that the "adverse employment actions were taken for a legitimate, nondiscriminatory reason." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The federal courts have recognized the existence of hostile environment harassment theory in race discrimination cases. Lattimore v. Polaroid Corp., 99 F.3d 456, 463 (1st Cir.1996); Daniels v. Essex Group, Inc., 937 F.2d 1264 (7th Cir.1991). The United States Supreme Court has stated that Title VII is violated when the workplace is permeated with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). In Huckabay v. Moore, 142 F.3d 233 (5th Cir.1998), the Court concluded that the hostile environment faced by the plaintiff was a continuing violation such that he was relieved of establishing that all of the complained of conduct occurred within the actionable time period. While Huckabay does not stand for the proposition that all hostile environment claims are continuing violations, Id. at 239, if a person is subjected to ongoing harassment, that is continual, and a permanent condition of the workplace, then prescription does not begin to run until the conduct causing the damage is abated. Bustamento, 607 So.2d 532, 542. "[W]hen the acts or conduct are continuous on an almost daily basis, by the same actor, of the same nature, and the conduct becomes tortious and actionable because of its continuous, cumulative, synergistic nature, then prescription does not commence until the last act occurs or the conduct is abated." Id.
In the case presently before us, the plaintiff alleges that he was subjected to a continuously hostile work environment caused by the racially discriminatory practices of the defendant and that this continued and cumulated over a period of time until he was forced to resign effective March 24, 1995. Clearly, under Bustamento, plaintiff's cause of action was not prescribed on the face of the pleadings. Unless prescription is evident from the face of the pleadings, the party raising the peremptory exception of prescription bears the burden of proof. Spott v. Otis Elevator, 601 So.2d 1355, 1361 (La.1992). Therefore, the defendants had the burden of proving the exception of prescription. The defendants did not meet this burden at the hearing on the exception of prescription, hence the Court of Appeal's decision affirming the exception of prescription was erroneous. The question of whether *189 the defendants' conduct created a continuously hostile working environment is referred for trial on the merits. Plaintiff's claim for intentional infliction of emotional distress against Phelps is also referred for trial on the merits. The Court of Appeal's decision affirming the exception of prescription in favor of the defendants is vacated.

DECREE
For the foregoing reasons, we vacate that portion of the court of appeal judgment affirming the exception of prescription against all defendants. The matter is remanded to the District Court for trial on the merits. In all other respects, the decision of the court of appeal is affirmed.
AFFIRMED IN PART; VACATED IN PART; REMANDED.
LEMMON and KIMBALL, JJ., concur and assign reasons.
VICTORY and KNOLL, JJ., concur in part and dissent in part with reasons.
TRAYLOR, J., dissents.
LEMMON, J., Concurring
The prescription issue in this case is controlled by the decision in Bustamento v. Tucker, 607 So.2d 532 (La.1992). In Bustamento, in which continuous sexual harassment of the plaintiff by a co-employee over a period of time allegedly caused a hostile work environment, this court held that "when the acts or conduct are continuous on an almost daily basis, by the same actor, of the same nature, and the conduct becomes tortious and actionable because of its continuous, cumulative, synergistic nature, then prescription does not commence until the last act occurs or the conduct is abated."[1]Id. at 542.
In the present case, plaintiff in his pleadings alleged a continuous course of conduct by agents of his employer which continued and cumulated over a period of time that lasted until his resignation. Plaintiff's cause of action, under Bustamento, clearly was not prescribed on the face of the pleadings, and defendant had the burden of proving its exception of prescription. Defendant did not meet its burden on the trial of the exception,[2] but possibly may do so at the trial on the merits, at which time it may reurge its exception.
KIMBALL, Justice, concurring in the judgment.
I agree with the majority's decision to dismiss all of Mr. King's claims against the individual defendants, including the claims for race discrimination in employment under La. R.S. 23:1006 and for intentional infliction of emotional distress. In his petition, King ostensibly pleads a third cause of action, which incorporates by reference his claims for race discrimination in employment and for intentional infliction of emotional distress. Thereafter, he states:
As a result of defendants' discriminatory action described above, plaintiff's reputation as an attorney has been irreparably damaged and, consequently, plaintiffs earning capacity has been reduced.
Plaintiff's Petition at 6. The individual defendants moved for summary judgment as to "all allegations against them," supporting their motion with affidavits, deposition testimony, and pertinent pleadings. The district court granted the motion for summary judgment dismissing plaintiff's entire case against the individual defendants and the court of appeal affirmed, reasoning that King failed to meet his summary *190 judgment burden. On certiorari, King complains that the lower courts erroneously dismissed the claims for alleged damage to reputation and loss of earning capacity because the individual defendants did not point out to the court that there is an absence of factual support essential to the claims. La. C.C.P. art. 966(C)(2).
A fair reading of plaintiff's petition, however, shows that his allegations of damage to reputation and loss of earning capacity are more fairly construed as elements of damage for the discrimination claims rather than as independent causes of action. "Every pleading shall be so construed as to do substantial justice." La. C.C.P. art. 865. As such, the individual defendants' motion for summary judgment, which sought and received a judgment dismissing all allegations against them, including the claim for race discrimination in employment, properly disposed of all claims against Messrs. Shaw, Cheatwood, and Rosenberg.
I respectfully concur in the decision to reverse the judgment of the lower courts which sustained the exception of prescription as to all defendants. King's discrimination claim essentially encompasses a claim for race discrimination in employment that includes the creation of a racially-hostile work environment that ultimately forced him to resign. In determining whether plaintiffs discrimination claims prescribed, the defendants suggest that we should avoid the "continuing violation" doctrine espoused in federal employment jurisprudence and recognized by this Court in Bustamento v. Tucker, 607 So.2d 532, 541-42 (La.1992), and instead incorporate the rule enunciated in Delaware State College v. Ricks, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), which holds that the date of notification of an adverse employment action begins the running of prescription. Considering the basis for applying the continuing violation doctrine in the employment context, and after evaluating the record evidence as it currently exists, I agree that King's discrimination claim should survive a prescription exception at this stage.
In Bustamento, we recognized that the continuing violations doctrine is often applied in hostile work environment claims and we authorized the doctrine's use in certain sexual harassment contexts. 607 So.2d 532, 541-42. While we did not decide that every hostile environment claim would necessarily constitute a continuing violation, we concluded that the environment faced by Ms. Bustamento indeed met the standard. A plaintiff seeking to benefit from the doctrine's use must demonstrate more than a series of discriminatory acts. Rather, the plaintiff "must show an organized scheme leading to and including a present violation, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action." Huckabay v. Moore, 142 F.3d 233, 239 (5th Cir.1998) (citations omitted). The doctrine will render a complaint timely as to a course of conduct only if the complaint is timely as to the most recent occurrence. Id. at 240.
King alleges numerous instances of discrimination in his petition, including a hostile work environment claim that apparently continued past the January 1995 associate evaluation meeting. He specifically claims that after the evaluation took place, "[t]he pressure brought to bear upon plaintiff ... became unbearable. With each passing day, the employment environment became more and more hostile." Plaintiffs Petition at 4. In addition, King alleged that a reduction in work assignments, which affected his salary, occurred after the evaluation conference. In my view, these allegations are sufficient to state a cause of action for hostile work environment, which allegedly continued past the January 1995 meeting and ultimately forced King to resign in March 1995. As such, the burden is placed on the defendants in urging a prescription exception to contradict King's allegations with proof that his hostile work environment *191 claim did not extend past the January 1995 meeting. Ordinarily, a party who pleads prescription bears the burden of proving the exception. Pearson v. Hartford Accident & Indemnity Co., 281 So.2d 724, 726 (La.1973). However, if the plaintiff's cause of action is prescribed on the face of the petition, the plaintiff bears the burden of rebutting the presumption. Lima v. Schmidt, 595 So.2d 624, 628 (La. 1992). Plainly, the onus was on the defendants to prove the discrimination claims were prescribed since the petition did not clearly show that the claims were time-barred. Therefore, I agree with the majority's conclusion that the lower courts were manifestly erroneous in disregarding King's hostile environment allegations which extended until March 1995.
I also disagree that the standard set forth in Ricks is applicable given these particular allegations. In Ricks, the question was whether a cause of action for discrimination accrued when the plaintiff was denied tenure, allegedly on discriminatory grounds, or when his employment contract expired a year later. See Ricks, 449 U.S. at 259-260, 101 S.Ct. 498. The Supreme Court expressly rejected a bright-line, last-day-of-work rule, id. at 255-56, 101 S.Ct. 498, holding instead that the filing limitation period for employment discrimination claims commences on the date the allegedly discriminatory decision "was made and communicated to [the employee]." Id. at 258, 101 S.Ct. 498. Thus, the last day of employment may not always coincide with the start of the prescription clock. Rather, the limitation period begins to run "on the date when the employee receives a definite notice of the termination." Miller v. IT & T, 755 F.2d 20, 23 (2d Cir.), cert. denied, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985) (citations omitted).
The defendants argue that a reasonable person in King's position would have thought he was being fired in the January 1995 meeting, and they point to excerpts from his deposition as support. However, "Ricks does not hold that the statute of limitations begins to run as soon as the handwriting is on the wall. The point was not that when Ricks was denied tenure he knew his days were numbered. The point was that the denial of tenure was an adverse personnel action forbidden if done for discriminatory reasons." Cada v. Baxter Healthcare Corp., 920 F.2d 446, 449 (7th Cir.1990), cert. denied, 501 U.S. 1261, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). I believe that the more appropriate interpretation would be for prescription to commence when an adverse personnel action is taken, and until it is taken, the prescriptive period will not begin to run. See id. Here, there is no allegation that an adverse personnel action was taken against King in January 1995; he later voluntarily resigned, evidently with the encouragement of the defendants, but apparently without any definitive personnel decision having been made.
VICTORY, J., concurring in part, dissenting in part.
I concur in the majority's result on all issues but prescription. I would vacate the court of appeal's ruling on prescription and, due to the conflict between plaintiff's deposition and his affidavit, remand it to the trial court for a full hearing on the issue.
KNOLL, Justice, concurring in part, dissenting in part.
I concur with the majority's conclusion that the plaintiff has failed to establish a claim for intentional infliction of emotional distress and that the individual defendants named in the suit were entitled to summary judgment dismissing them from the suit. I cannot agree, however, with the majority's conclusion that the plaintiffs claim for employment discrimination has not prescribed because the defendant's alleged actions constituted a continuing tort.
The majority's reliance upon the continuous tort doctrine is flawed because no evidence properly admitted supports the *192 majority's conclusion that March 10, 1995, was "when [Mr. King's] working conditions became too intolerable to continue." Nothing but the plaintiff's own subjective and conclusive allegations suggests that conditions for Mr. King after January 20, 1995, continued and got worse to the point that he was forced to tender his resignation on March 10, 1995, effective March 24, 1995. A subjective belief of discrimination, no matter how genuine, cannot support a claim of discrimination. Elliott v. Group Med. & Surgical Serv., 714 F.2d 556, 567 (5th Cir.1983), cert. denied, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984). Discrimination claims under La.R.S. 23:1006 are subject to a one-year liberative prescriptive period. La.Civ.Code. art. 3492. The courts, however, have recognized an exception applicable in exceptional circumstances where unlawful employment practices manifest themselves over time from continuous conduct causing continuing damages. Bustamento v. Tucker, 607 So.2d 532 (La.1992); South Cent. Bell Tel.Co. v. Texaco Inc., 418 So.2d 531 (La. 1982). When tortious conduct and resulting damages are of a continuing nature, prescription does not begin until the conduct causing the damages is abated. Id. Continuing damages alone, however, do not suffice to create a continuing tort; there must also be continuing acts of fault. South Central Bell Telephone Co., 418 So.2d at 532-33. The principle behind the continuing tort doctrine is that it protects plaintiffs from acts which by themselves may not be unlawful or sufficient to alert the plaintiff that his rights have been violated, but instead require a cumulative process to become actionable. In its early stages, the acts are not identifiable as unlawful, or may not have crossed the threshold that separates the nonactionable from the actionable. See, e.g., Bustamento, 607 So.2d at 532. Thus, where the unlawful practice manifests itself over time, rather than as a series of discrete acts or by a defining act alerting the plaintiff of a violation of his rights, the plaintiff is relieved of proving that the entire violation occurred within the actionable period, providing the plaintiff proves a series of related acts, one of which falls within the prescriptive period. Nonetheless, the very concept of cumulation in the continuing tort doctrine suggests a critical limiting principle: A plaintiff may not rely upon the continuing tort doctrine unless it would be unreasonable to expect that the plaintiff knew or should have known that his rights were being violated by unlawful conduct that renders the action untimely.
Thus, in order to allege a continuing tort and extend the statute of limitations, the plaintiff bears the burden of showing a series of unlawful, continuous, and related acts and the resulting continuous damages. Bustamento, 607 So.2d at 538; see generally Speer v. Rand McNally & Co., 123 F.3d 658, 663 (7th Cir.1997); Mascheroni v. Board of Regents, 28 F.3d 1554, 1561 (10th Cir.1994); Delaware State College v. Ricks, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Further, under the continuous tort exception, the "focus is on what event, in fairness and logic, should have alerted the average[, reasonable,] lay person to protect his rights." Webb v. Cardiothoracic Surgery Assoc. of N. Tex., 139 F.3d 532, 537 (5th Cir.1998). Despite the overwhelming jurisprudence to the contrary, the majority improperly shifts the burden to the defendants to prove that the plaintiff's claim had prescribed. Having relied upon the continuing tort theory, the proper burden was on Mr. King to prove the jurisprudential exception to the law. If the claimant cannot satisfy this burden, the cause of action for employment discrimination is time-barred. The record supports that defining event, in fairness and logic, on which a reasonable person in Mr. King's position would have been convinced of the alleged unlawful basis for the alleged employment discrimination and alerted to protect his right occurred on or before January 20, 1995, thus failing his burden of showing a continuing tort. Instead, plaintiff and the majority rely upon conclusory allegations in his petition, *193 affidavit, and deposition, evidence which cannot support a finding that the defendant's actions were continuous.
Mr. King's claim is for employment discrimination resulting in constructive discharge. The majority recognizes this by noting: "Plaintiff alleges that following his unfavorable performance review, he was subjected to a series of discriminatory violations, and that the increasingly hostile work environment became unbearable at the point when he was forced to resign; as such prescription commenced to run on March 24, 1995, the effective date of his resignation, and this action was filed within one-year of that date." (emphasis added). A constructive discharge occurs when the trier of fact is satisfied that the working conditions to which the employee is subjected to are so intolerable that a reasonable person would feel compelled to resign, not when he necessarily does so. Plummer v. Marriott Corp., 94-2025 (La. App. 4 Cir. 4/26/95), 654 So.2d 843, 848, writ denied, 95-1321 (La.9/15/95), 660 So.2d 460; Ricks, 449 U.S. at 257-59, 101 S.Ct. 498 (holding that limitation periods for an employment discrimination claim based on Title VII and 42 U.S.C. § 1981 commenced on the date the alleged unlawful decision was made and the plaintiff was given notice and noting that "continuity of employment, without more, is insufficient to prolong the life" of the action). The effect of the majority's opinion is that prescription in constructive discharge cases will never commence until the employee, no matter how unreasonable the decision may be, decides to quit, making subjective continuing torts imprescriptible despite the presence of objective defining events that belie that position. In this case, Mr. King's running for public office in an effort to leave Phelps, the January 20, 1995 employment evaluation, and Mr. King's own deposition and affidavit provide the necessary objective criteria to support a finding that Mr. King's action had prescribed.
The record clearly evidences the latest date on which a reasonable person in Mr. King's position would believe he was constructively discharged and convinced of the alleged discriminatory basis for that discharge was January 20, 1995. On this date, Mr. King had an associate evaluation at which time Phelps informed him that his chances of becoming a partner in the firm were nonexistent and that he should consider leaving the firm. (R. 292-93). When questioned about this evaluation in his deposition and how he subjectively interpreted it, Mr. King stated: "What I understood that to mean is exactly what they said, that I should consider ... a career change, that I don't have a future there at Phelps.... I took it as a comment that you are, this is it for you. You are fired without them saying that you are fired." Id.(emphasis added). Under the continuous tort exception, the "focus is on what event, in fairness and logic, should have alerted the average[, reasonable,] lay person to protect his rights." Webb v. Cardiothoracic Surgery Assoc. of N. Tex., 139 F.3d 532, 537 (5th Cir.1998). The record shows, and the plaintiff admits, that all the events described would have alerted any reasonable person in Mr. King's position that on January 20, 1995, he was constructively discharged and convinced of the alleged discriminatory basis for that discharge, and that he had a duty to act promptly to protect his rights. It is immaterial that he continued to work for the firm as an associate until he tendered his resignation. A plaintiff cannot rely upon the continuing tort doctrine when he knows or should have known at the time the conduct occurred that his rights had been violated and he should take action to secure his rights. See, e.g., Sabree v. United Bhd. of Carpenters & Joiners Local No. 33, 921 F.2d 396, 402 (1st Cir.1990) ("A knowing plaintiff has an obligation to file promptly or lose his claim. This can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern."); Webb, 139 F.3d at 537 (same); *194 Speer v. Rand McNally & Co., 123 F.3d 658 (7th Cir.1997) (same); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir.1996) (same). Mr. King was immediately aware of this act at the time of its occurrence, stated what he believed to be the effect of the evaluation, and was on notice that his rights had been allegedly violated. Based upon this factual predicate, Mr. King needed no additional facts after the January 20, 1995, meeting to understand that he was constructively discharged and convinced of the alleged discriminatory basis for that discharge.
Thus, the trial court and court of appeal were not manifestly erroneous in finding that the plaintiff's claims had prescribed. Because plaintiff filed his action more than one-year after he knew or should have known that his rights were allegedly violated failed to timely take action to secure his rights, the suit was clearly prescribed.
For these reasons, I respectfully dissent.
NOTES
[*] Marcus, J., not on panel. See Rule IV, Part 2, Sec. 3.
[1] Mr. King testified in his deposition that he took the comments made during his January 20, 1995 evaluation, that his chances of making partner were nonexistent and that he should consider making a career change, to mean "this is it for you, you are fired without them saying that you are fired."
[2] See also La.Rev.Stat. Ann. 1:2, which provides: "[n]o Section of the Revised Statutes is retroactive unless it is expressly so stated."
[3] The definition of employer provided in La. Rev.Stat. Ann. 51:2232(4) was applied to determine whether the individual defendants are employers under the provisions of former La.Rev.Stat. Ann. 23:1006. The former provisions of 23:1006 did not contain a definition of employer, therefore, the definition given in 51:2232(4) was utilized. The remaining provisions of La.Rev.Stat. Ann. 51:2231 et seq. govern the adjudication of employment discrimination claims by the Louisiana Commission on Human Rights.
[4] The only issue before this Court regarding plaintiff's claim for intentional infliction of emotional distress against Phelps is whether or not the claim has prescribed. Since this claim is intertwined with the claim for racial discrimination, the same dates will be considered for both. The resolution of the prescription issue does require consideration of the merits of this claim. The sufficiency of this claim should be considered at trial on the merits.
[1] A tort committed by a continuous course of conduct over a period of time is distinguishable from several separate torts committed over a period of time. In the latter case, prescription generally begins to run from the commission of each separate tort, and only those separate torts which are committed within one year of filing of suit are not prescribed.
[2] Because the exception and the merits are so factually intertwined, the exception probably should have been referred to the merits.