826 So.2d 581 (2002)
In re ASBESTOS PLAINTIFFS (Merlin Chariot)
v.
BORDEN, INC., et al.
No. 2001-CA-1379.
Court of Appeal of Louisiana, Fourth Circuit.
August 14, 2002.
*585 Gerolyn P. Roussel, Perry J. Roussel, Jr., Roussel & Roussel, LaPlace, LA, for Merlin Charlot.
Jackson H. Ables, III, Daniel, Coker, Horton & Bell, P.A., Jackson, MS, for Employers Mutual Liability Ins. Co. of Wisconsin.
Keith M. Pyburn, Jr., McCalla, Thompson, Pyburn, Hymowitz & Shapiro, New Orleans, LA, Brian C. Bossier, Michal P. Adler, John C. Overby, Justin L. Hawks, Blue Williams, L.L.P., Metairie, LA, for Avondale Industries, Inc.
James R. Logan IV, Logan & Soileau, LLC, New Orleans, LA, for Fidelity & Casualty Company of New York.
Tobin J. Eason, John E. Unsworth, III, Weiss & Eason, LLP, New Orleans, LA, for Employers' National Ins. Co. and Liga.
Rodney J. Lacoste, Jr., Leake, Andersson & Mann, L.L.P., New Orleans, LA, for Employers Mutual Liability Ins. Co. of Wisconsin.
(Court composed of Judge STEVEN R. PLOTKIN, Judge MIRIAM G. WALTZER, and Judge TERRI F. LOVE).
TERRI F. LOVE, Judge.

FACTS AND PROCEDURAL HISTORY
On October 2, 1991, Plaintiff, Merlin Charlot ("Mr.Charlot") filed a negligence and racial discrimination lawsuit against twenty-seven defendants, including former employers, Defendant, Equitable Shipyards ("Equitable") and Avondale Industries ("Avondale"), alleging that he acquired asbestosis, silicosis, occupational asthma and solvents neurotoxicity as a result of being exposed to environmental agents in the work place. A jury verdict was rendered in favor of five of the defendants. A verdict was also returned in favor of Mr. Charlot against the remaining defendants Mr. Charlot was awarded $1,750,000 in general damages, $970,000 in special damages and $476,000 for past and future medical care. Following the verdict, the trial court granted a new trial as to all of the defendants.
Prior to the second trial, the trial court severed the plaintiffs racial discrimination claim from the plaintiffs other tort claims. Subsequently, Equitable filed an Exception of Prescription that the court granted. The trial court also granted Avondale Industries, Inc.'s Motion for Summary Judgment on the negligence and racial discrimination claim and also granted its Peremptory Exception of Res Judicata as to the racial discrimination claim. Therefore, the May 29, 1996 judgment dismissed Avondale from the case. Mr. Charlot now appeals the trial court's judgments in regards to the motions filed by Equitable and Avondale.

STANDARD OF REVIEW
It is well settled that a trial court's findings of fact will not be disturbed unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. Syrie v. Schilhab, 96-1027 *586 (La.5/20/97), 693 So.2d 1173, 1176. Thus, in order to reverse a trial court's findings of facts, an appellate court must first determine, after reviewing the record in its entirety, that a reasonable factual basis does not exist for the finding and that the record establishes that it is clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La. 1987).

I. EQUITABLE

Did the trial court err by granting Equitable's Motion for Summary Judgment on the basis of prescription?
In Equitable's Motion for Summary Judgment, it argued that Mr. Charlot failed to file his lawsuit within the applicable one year prescriptive period and consequently, his lawsuit should be dismissed. Mr. Charlot had worked at Equitable during four periods: February 17, 1972-April 17, 1972 as a painter; October 21, 1974-April 14, 1975 as a painter; April 14, 1975-October 27, 1975 as a sandblaster and October 27, 1975-October 29, 1976 as a rigger. During these periods he suffered reactions to the paints and fumes at Equitable. Mr. Chariot reported becoming ill due to agents present in his working environment. Specifically, in November of 1974, he became sick from inhaling paint. In February of 1975, he suffered an allergic reaction to paint, which caused his neck, face and arms to break out in a rash. Lastly, in September of 1976, Mr. Charlot reported dizziness and coughing up blood. Mr. Charlot argues the applicable prescriptive period had not run because he was not diagnosed with occupational asthma until 1991. Thus, he contends that he could not have reasonably been aware that he suffered any injury as a result of his employment at Equitable until he was properly diagnosed. Consequently, as a result of the diagnosis, he had a basis to proceed with his lawsuit against Equitable.
The applicable prescriptive period for tortious conduct is governed by Civil Code Article 3492, which provides that delictual actions are subject to a liberative prescription of one year from date of injury or date damage is sustained. La. Civ.Code art.3492. We articulated the determination of when prescription begins to run in Asbestos v. Bordelon, Inc., 96-0525 (La.App. 4 Cir. 10/21/98), 726 So.2d 926, 975:
Ultimately, when prescription begins to run depends on the reasonableness of a plaintiff's action or inaction. Clearly, prescription begins to run when a plaintiff has actual knowledge of an injury. However, in the absence of a plaintiff's actual knowledge, prescription will begin to run when the plaintiff has constructive knowledge; that is, information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry.
[Citations omitted.]
Thus, the issue which this Court must determine is whether the trial court erred in determining that Mr. Charlot's claim had prescribed. Upon review of the record, we are convinced that the trial court was not in error. The testimony and evidence submitted at trial clearly revealed that Mr. Charlot manifested symptoms of asthma between 1974 and 1976. As we stated in Asbestos v. Bordelon, supra, in addition to actual knowledge of injury i.e. a specific or pointed diagnosis, prescription will begin to run when the plaintiff has constructive knowledge; that is, information sufficient to incite curiosity, excite attention, or put a reasonable person on guard to call for inquiry. Although Mr. Charlot began to exhibit symptoms of asthma in the 1970's, he was not diagnosed with occupational asthma until November of 1991. Dr. Cullen Hebert and Dr. Kaye *587 Kilburn testified that they related Mr. Chariot's illnesses to the conditions present in the work environment at Equitable. Dr. Robert Jones, a pulmonologist testified that Mr. Charlot had ordinary asthma, unrelated to occupational exposure. Furthermore, Dr. Jones stated that even if the environmental conditions at Equitable contributed to Mr. Charlot acquiring asthma, the asthma would have manifested itself as soon as he was exposed and not years later. In sum, he stated that asthma is not a latent disease, but one that becomes immediately active as soon as it is triggered.
At trial, the judge determined that Mr. Charlot's asthma was not a latent disease and that further, any claims that he had against Equitable had prescribed. At the conclusion of the hearing on the prescription issue, the trial judge stated:
".... The question is when prescription should run. I have had enough experience with prescription cases, I mean a lot of experience with it, that if it is something that he has treatment for, whether or not the exact diagnosis that is sufficient to have the running of prescription.
In this case everything tells me that this is not an asbestos or a silicosis type of situation. This is a different one, and based on that, I think the exception is well taken. And I sustain the objection."
The trial court reasoned that any treatment for Mr. Charlot's symptoms triggered the tolling of prescription, despite the fact that he had not yet been specifically diagnosed with a disease. Thus, irrespective of which physician was correct in properly diagnosing Mr. Chariot as having occupational or regular asthma, he had reasonable notice of his injuries in the 1970's and prescription began to run at that time. Contrary to plaintiff's arguments, Mr. Charlot's belated diagnosis does not signal the beginning of the prescriptive period. In order to find that the trial court was in error, we would have to find that there exists no factual basis in the record for the trial judge's conclusion. Syrie, 693 So.2d 1173. Based upon our review of the evidence, we find that there exists substantial documentation and testimony in the record to support the trial court's decision.

AVONDALE

1. Did the trial court err by granting Avondale's Exception of Res Judicata in regards to Mr. Chariot's race discrimination claim?
Avondale filed an Exception of Res Judicata alleging that since Mr. Charlot had previously brought a claim under the Longshore and Harbor Worker's Compensation Act ("LHWCA"), he was thereby precluded from filing a civil tort suit on the basis of racial discrimination. Avondale claims that Mr. Chariot has filed suit against Avondale based upon the same facts as the suit presented at the LHWCA hearing and merely altered the allegations to claim racial discrimination. The trial court granted Avondale's Exception of Res Judicata, dismissing the occupational asthma claim.
It is well settled that, on considering an Exception of Res Judicata, the burden of proof is on the party who urges the exception to prove its essential elements by a preponderance of the evidence. Lennix v. Big 3 Industries of Air Liquide, 98-1275 (La.App. 3 Cir. 3/30/99), 735 So.2d 78, 80; Davis v. Home Depot, 96-850 (La. App. 5 Cir. 2/25/97), 690 So.2d 208, 211. Res judicata cannot be invoked unless all its essential elements are present and each necessary element has been established beyond all question. Spear v. Prudential Property and Cas. Ins. Co., 98-1663 (La. *588 App. 4 Cir. 1/13/99), 727 So.2d 640, 642. If there is any doubt as to its applicability, the exception must be overruled. Lennix, 735 So.2d at 80. As the court in Terrebonne Fuel and Lube, Inc. v. Placid Refining Co., 95-0654 (La.1/16/96), 666 So.2d 624, 632 stated as guidance for reviewing a claim of res judicata:
The central inquiry is not whether the second action is based upon the same cause of action, but whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action.
On June 13, 1995, a LHWCA hearing was held in which Mr. Charlot alleged that as a result of the work environment at Avondale, he developed occupational asthma and silicosis. The unresolved issues presented at the LHWCA hearing were: (1) the causal relationship between the work environment and the injury (2) determination of the last causative employer (3) Mr. Charlot's extent of disability and (4) prescription. The administrative law judge found that Mr. Charlot did not suffer from occupational asthma but that he did suffer from silicosis. However, he determined that since Avondale was not the last causative employer, Mr. Charlot had no legal remedy against Avondale in an LHWCA hearing. The last causative employer rule is a judicially created rule for allocating liability among successive employers in cases where an occupational disease develops after prolonged exposure to injurious conditions. Travelers Ins. Co. v. Cardillo, 225 F.2d 137, 144-45 (2d Cir.1955), cert denied, 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955).
The LHWCA judge found that Mr. Charlot's last two causative employers were Equitable Shipyards and Professional Coatings between 1972 and 1982. He noted that both of these employers used sand in their sandblasting jobs, and in Mr. Charlot's position as a sandblaster, he was exposed to significant amounts of silica. He further stated that although Mr. Charlot worked as a sandblaster for Avondale, Avondale stopped using sand in its sandblasting jobs in the 1970's. In concluding, he stated that "[Avondale] was not the last covered employer to expose claimant to the injurious stimuli, silica, prior to the date that he was aware that he suffered from the work related disease, which was sometime after 1991."
Thus, the issue that this court must decide is whether the LHWCA decision finding Avondale not to be the last causative employer precludes Mr. Charlot from proceeding against Avondale on the basis of racial discrimination in the present case. Res judicata has effect with respect to any issue actually litigated and determined if its determination was essential to that judgment. La. R.S. 13:4231.
The administrative law judge who rendered the aforementioned decision had limited jurisdiction, in that he was only permitted to hear claims arising out of the LHWA. Consequently, Mr. Charlot could not have brought his racial discrimination and negligence claims in the LHWCA hearing because it was beyond the jurisdiction of the trial judge to hear these additional issues. As such, the doctrine of res judicata is inapplicable because no judgment has been rendered on Mr. Charlot's claims.
Alternatively, even under the argument of issue preclusion, Avondale's argument still fails. The LHWCA did not determine that Mr. Charlot was not injured, it held that Avondale was not his last causative employer. Although, this determination is relevant under the LHWCA, it has no bearing upon Mr. Charlot's claims for racial discrimination in *589 the current matter. For this reason, there is no barrier preventing Mr. Charlot from bringing his present claims before the trial court. Therefore, we find that the trial court was in error for finding that Mr. Charlot's claim was barred by the doctrine of res judicata. Therefore, the trial court judgment granting Avondale's exception of res judicata is reversed.

2. Did the trial court err in granting Avondale's Motions for Summary Judgment on the issues of racial discrimination?
Mr. Charlot also alleges that the trial court erred in granting Avondale's Motion for Summary Judgment on the issue of racial discrimination and duty/risk.
Appellate courts review summary judgments de novo. Lawyer v. Kountz, 97-2701 (La.App. 4 Cir. 7/29/98), 716 So.2d 493. A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(b). Summary judgments are now favored, and the rules regarding such should be liberally applied. Lawyer, 716 So.2d at 495.
Mr. Charlot claims that the racial discrimination perpetuated at Avondale caused him to acquire silicosis. He asserts a litany of incidents, facts and statistics in support of this allegation of racial discrimination under La. R.S. 23:1006.[1] In pertinent part, this statute provides:
B. (1) it shall be unlawful discrimination in employment for an employer to:
(a) intentionally fail or refuse to hire, refer, discharge, or otherwise intentionally discriminate against or in favor of an individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, disability as defined in R.S. 51:2232(11), or national origin.
(b) intentionally limit, segregate, or classify an employee in a way which would deprive an individual of employment opportunities, give a favor of advantage to one individual over another, or otherwise adversely or favorably affect the status of an employee because of race, color, religion, sex, disability as defined in R.S. 51:2232(11), or national origin.
Because La. R.S. 23:1006 is similar in scope to the federal prohibition against discrimination, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., Louisiana courts have looked to federal jurisprudence to interpret Louisiana discrimination laws. King v. Phelps Dunbar, L.L.P., 98-1805 (La.6/4/99), 743 So.2d 181, 187. Under federal law, the plaintiff bears the burden of proving that the defendant intentionally discriminated against him or her on the basis of race. Id. at 188. Therefore, the scheme of proof under federal jurisprudence requires that plaintiff first establish by a preponderance of the evidence, a "prima facie" case of racial discrimination. Plummer v. Marriott Corp., 94-2025 (La. App. 4 Cir. 4/26/95), 654 So.2d 843, 848.
Mr. Charlot supports his claims of discrimination by asserting that he and other Blacks were called racial slurs and that they were relegated to menial positions or "dirtier" jobs than their white counterparts. He states that Blacks were forced to work during storms and with certain toxic fumes, while white employees were not subjected to such practices. *590 Furthermore, he cites statistics which demonstrate that the majority of sandblasters at Avondale were black, yet, the workforce at Avondale was predominantly white. Statistical evidence, such as the number of minorities in certain positions, is not sufficient evidence to meet an employee's burden of proof of discrimination under Louisiana law. Lawson v. State, Dept. of Health and Hospitals (DHH), Cent. Louisiana State Hosp. (La. App. 1 Cir.1993), 618 So.2d 1002, 1004. Raw data does not prove discrimination under the Louisiana Constitution. Id. Thus, Mr. Charlot's claim that most of the sandblasters were black and that whites occupied the remaining positions is not weighted greatly in the overall scheme of determining whether he was discriminated against.
On the other end of the spectrum, we decline to go so far as to adopt the simplistic approach of Avondale, which argues that in essence, Mr. Charlot has no claim, "because he got the job that he applied for." Although Avondale is technically correct, it completely dismisses the likely probability that Blacks applied for sandblasting positions at Avondale because it may have been implicitly understood that likely, these were the only positions for which they would be hired. Thus, with limited real employment possibilities, many Blacks may have mainly applied for and been hired for sandblasting positions, thus yielding the vast discrepancy between black and white sandblasters.
Nevertheless, irrespective of Avondale's flawed attempt to underscore Mr. Charlot's discrimination claim, the fact remains that Mr. Charlot failed to demonstrate that he possessed a viable case under our current discrimination statute. Although there exist facts to suggest that there may have been some racial animus at Avondale, La. R.S. 23:1006 is the incorrect vehicle by which to address Mr. Charlot's grievances and alleged injuries. La. R.S. 23:1006 was not intended to and is not in place to protect against occupational health hazards such as silicosis and occupational asthma caused by alleged racial discrimination. The statute is in place to protect against and prevent discrimination in the workplace as it relates to employment related opportunities. Our existing tort and worker's compensation statutes provide adequate remedies for workplace injuries and illnesses, without respect to racial motivation. For this sole reason, we find that the trial court judge did not err.

Duty/Risk
Mr. Charlot also presents the argument that a duty/risk analysis imputes liability upon Avondale. In essence, he argues that Avondale had a duty not to discriminate against him to protect against the risk that he might suffer the injury with which he is currently afflicted.
Louisiana law provides that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La. C.C. art. 2315. La. C.C. art. 2316 states that every person is responsible for the damages he occasions, not merely by his act, but by his negligence, his imprudence or his want of skill. In a negligence action under La. C.C. art. 2315 plaintiff must prove that defendant's conduct was a cause in fact of the injury; that defendant owed a legal duty encompassing the particular risk of harm to which plaintiff was exposed; that defendant owed a legal duty encompassing the particular risk of harm to which plaintiff was exposed; that defendant breached that duty; and that damages were sustained. Turner v. Krauss Co., Ltd. (La. App. 4 Cir.1989), 543 So.2d 563, 565; Zellers v. National American Ins. Co., 514 So.2d 234 (La.App. 5 Cir.1987). A plaintiff bears the burden of proving by a preponderance *591 of the evidence whether it is more likely than not, that the harm was caused by the tortious conduct of the defendant. Lasha v. Olin Corp., 625 So.2d 1002, 1004 (La.1993). When determining whether a defendant's conduct is negligent, courts apply the duty/risk analysis. Todd v. State Through Dept. of Social Services, Office of Community Services, 96-535 (La. App. 5 Cir. 11/26/96), 685 So.2d 313, 317. Thus, a court must make the following findings:
1. That the conduct was a cause in fact of the resultant harm;
2. That a defendant owed plaintiff a duty;
3. That the duty owed was breached by a defendant;
4. That the risk of harm was within the scope of the breached duty
Davis v. Louisiana Power & Light Co., 00-13 (La.App. 5 Cir. 5/17/00), 762 So.2d 229, 233.
Under duty/risk analysis, this Court finds that Avondale's duty not to discriminate did not include the risk that Mr. Charlot would suffer from silicosis. As already discussed as it relates to Louisiana's discrimination law, La. R.S. 23:1006, the statute is imposed to protect against discriminatory practices that bear upon employment decisions and opportunities and not resulting occupational hazards. Thus, on this issue, Mr. Charlot's claim that, "[a]ll general damages are within the scope of protection afforded by the duty not to discriminate under the anti-discriminatory statute" is incorrect. We do not find that the Louisiana legislature by any stretch of the imagination intended for La. R.S. 23:1006 to encompass all general damages that have been and could possibly be sustained within the workplace as arising out of a duty not to discriminate. Therefore, we also find that the trial court committed no error in granting Avondale's Motion for Summary Judgment on the issue of racial discrimination and duty/risk.
Finally, Mr. Charlot argues that the trial court erred by severing his racial discrimination claim from the other claims presented. Since both discrimination claims were dismissed at the summary judgment (pre-trial) stage, this issue is moot. Nonetheless, such an issue is clearly within the discretion of the trial court judge and we decline to find error with this decision. Warren v. Bergeron, 599 So.2d 369, 372 (La.App. 3 Cir.1992).

CONCLUSION
Therefore, we find that the trial court committed no error in granting Equitable's Exception of Prescription and Avondale's Motions for Summary Judgment. However, we do find that the trial court erred in finding that Mr. Charlot's racial discrimination and duty/risk claims were barred by the doctrine of res judicata and as such, we reverse the trial court judgment granting Avondale's exception of res judicata.
AFFIRMED IN PART; REVERSED IN PART.
WALTZER, J., concurs with reasons.
I agree with the majority's opinion, affirming the trial court's finding that plaintiff's claims against Equitable had prescribed. However, I write separately to clarify my position regarding dismissal of all claims against Avondale.
Avondale argues that the trial court correctly sustained its exception of res judicata. I do not agree.
When a state court is required to determine the preclusive effects of a judgment rendered by a federal court exercising federal question jurisdiction, it is the federal law of res judicata that must be applied. Reeder v. Succession of Palmer, 623 So.2d *592 1268, 1271 (La.1993). For this reason, we must consider not Louisiana law but federal law of res judicata.
The parties do not argue that the decision by the administrative law judge (ALJ) invokes the doctrine of claim preclusion, or true res judicata. We can understand why Avondale did not raise this argument. The ALJ's decision could not preclude relitigation of the state law claims, because the ALJ lacked jurisdiction to hear any claims other than those claims brought pursuant to the Longshore and Harbor Worker's Act (LHWA). Reeder, supra at 1273. See Texas Employers' Insurance Ass. v. Jackson, 862 F.2d 491, 501-03 (5th Cir.1988). The ALJ was sitting as a court of limited jurisdiction and could only hear claims under the LHWA.
Avondale argues that the ALJ's decision to deny benefits, after finding that Chariot had not proven that his asthma was work-related, precluded him from relitigating in the state action the issue of whether Charlot suffered a compensable injury. This argument involves the doctrine of issue preclusion.
On 2 October 1991 Charlot filed a civil suit for damages against Avondale. Charlot also filed a claim for benefits under the Longshore and Harbor Worker's Compensation Act against Avondale. On 3 October 1995, an administrative law judge rendered a decision on this claim denying Charlot benefits under the LHWA. The ALJ found that Charlot does not suffer from occupational asthma, or that Charlot did not prove the alleged asthma was work-related, but does suffer from simple silicosis, which diagnosis is work-related. However, the ALJ denied benefits because Avondale was not "the last covered employer to expose claimant to injurious stimuli prior to the date he became aware that he is suffering from occupational disease arising out of his employment." Todd Shipyards Corp. v. Black, 717 F.2d 1280 (9th Cir.1983), cert. denied 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984). Whether Avondale was the "last causative employer" is not an issue relevant to determination of causation in his civil suit for damages. No court in Louisiana has adopted this judicially created rule limiting benefits under the LHWA, and I find no authority for the determination that the ALJ's finding precludes re-litigation of the issue of whether Charlot's exposure at Avondale caused his alleged injuries, whether those injuries be asthma, silicosis, asbestosis, or some neurological disorder. Moreover, I find Avondale's argument to be both flawed and misleading. Avondale argues that the ALJ found that Charlot suffered no work-related injury, but the ALJ concluded that Charlot did suffer from a work-related injury, silicosis.
Charlot argues that the trial court erred in granting Avondale's motion for summary judgment, dismissing Chariot's racial discrimination claims.[1] I agree that Charlot failed to offer sufficient evidence to create a genuine issue of material fact that Avondale intentionally discriminated in its employment practices. Employment discrimination on account of race, color, religion, sex, disability, or national origin is presently governed by LSA-R.S. 23:331 to 23:334, which Chapter was enacted by Acts 1997, No. 1409, § 1. Formerly, such actions were governed by LSA-R.S. 23:1006, which statute was enacted by Acts 1983, No. 709, § 1, and was repealed by Acts 1997, No. 1409, § 4, effective 1 August 1997. The enactment of LSA-R.S. 23:331 *593 to 23:334 in 1997 constituted a substantive change in law. Thus, the new statute cannot govern Charlot's claims, because his suit was filed in 1991. LSA-C.C. art. 6 and King v. Phelps Dunbar, 98-1805, p. 4 (La.6/4/99), 743 So.2d 181, 185. Therefore, the provisions of the repealed LSA-R.S. 23:1006 govern Charlot's claims.
LSA-R.S. 23:1006, before its repeal in 1997, provided, in pertinent part,
B. It shall be unlawful discrimination in employment for an employer to:
(1) Intentionally fail or refuse to hire, refer, discharge or to otherwise intentionally discriminate against or in favor of an individual with respect to compensation, terms, conditions, or privileges of employment, because of race, color, religion, sex, or national origin, or
(2) Intentionally limit, segregate, or classify an employee in a way which would deprive an individual of employment opportunities, give a favor or advantage to one individual over another, or otherwise adversely or favorably effect the status of an employee because of race, color, religion, sex or national origin.
* * *
D. A plaintiff who has a cause of action against an employer for discrimination in employment may file a suit in the district court for the parish in which the alleged discrimination occurred seeking general or special damages, back pay, restoration of employment, related benefits, reasonable attorney's fees, and court costs.
Charlot bears the burden of proving that Avondale intentionally discriminated against him on the basis of race. King, supra at 98-1805, p. 8, 743 So.2d at 188, citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). A plaintiff must initially establish a prima facie case of discrimination, and the burden then shifts to the employer to prove that "the adverse employment actions were taken for a legitimate, non discriminating reason." King, supra at 98-1805, p. 8, 743 So.2d at 188, quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).
Charlot alleges that Avondale discriminated against him by giving him bad job assignments. He alleges that these assignments were motivated by his race. Essentially, he's making a claim of disparate treatment. Avondale moved for summary judgment, seeking dismissal of these claims. It supported its motion with various affidavits, including Landry Smith a Foreman at Avondale. Smith stated that he had worked at Avondale since the 1970's and that he had assigned white sandblasters to the assignments for which Charlot now complains. In opposition to the motion for summary judgment, Charlot introduced excerpts from the deposition testimony of various witnesses, including himself. This evidence purported that approximately 95% of the sandblasters, at Avondale and in the general population, were African American. Moreover, the testimony established that sandblasting is a hard job with some assignments being worse than others, but there is no evidence that the job assignments were motivated by racial animus. I find no error in the trial court's conclusion that Charlot failed to offer sufficient evidence to create a genuine issue of material fact. For these reasons, I would affirm the trial court's dismissal of all claims against Avondale, including those claims of race discrimination under Louisiana law.
PLOTKIN, J., concurs for the reasons assigned by J. WALTZER.
NOTES
[1] La. R.S. 23:1006 was repealed in 1997.
[1] The trial court severed Charlot's claims of racial discrimination under Louisiana law from the trial of his other claims. Charlot only appeals the dismissal of the racial discrimination claims.