898 So.2d 385 (2004)
William ALCORN
v.
CITY OF BATON ROUGE.
Albert Burns
v.
City Of Baton Rouge, Through the Baton Rouge Police Department.
No. 2002 CA 0952-R, 2002 CA 0953-R.
Court of Appeal of Louisiana, First Circuit.
December 30, 2004.
*386 Jill L. Craft, Baton Rouge, for Appellees Plaintiffs William D. Alcorn, Jr. and Albert Burns, Sr.
Michael E. Ponder, Parish Attorney, Gwendolyn K. Brown, Arlene C. Edwards, Assistant Parish Attorneys, Baton Rouge, for Appellant Defendant City of Baton Rouge, through The Baton Rouge Police Department.
Panel composed of Judges FRANK FOIL, VANESSA G. WHIPPLE, RANDOLPH H. PARRO, JOHN M. GUIDRY and PAGE McCLENDON.
FOIL, J.
This tort case involves a judgment rendered against the City of Baton Rouge, through the Baton Rouge Police Department ("the City"), awarding damages to two retired police officers for claims of racial discrimination, racial harassment, and unlawful retaliation. The matter came before us last year, at which time we reversed the award to one of the officers for unlawful retaliation, but affirmed the awards to both officers for racial harassment and racial discrimination. Alcorn v. City of Baton Rouge, 02-0952, 02-0953 (La.App. 1 Cir. 6/27/03), 851 So.2d 1194. Subsequently, the Louisiana Supreme Court vacated our opinion and ordered us to revisit the issue of whether the plaintiffs' claims of racial discrimination and racial harassment have prescribed. Alcorn v. City of Baton Rouge, 03-2682 (La.1/16/04), 863 So.2d 517. On remand, we conclude that the plaintiffs' claims are not prescribed and adopt our prior opinion of June 27, 2003, which addressed the merits of the damage awards.

FACTS AND PROCEDURAL HISTORY
Albert Burns, Sr., an African-American male, joined the Baton Rouge Police Department as a police officer in 1972 and retired in 1998. Mr. Burns filed a claim with the Equal Employment Opportunity Commission (EEOC) on October 23, 1995. He filed suit against the City on October 9, 1996, alleging federal and state claims of age discrimination, race discrimination, *387 and racial harassment,[1] and a state claim of intentional infliction of emotional distress.
In 1973, William Duplessis Alcorn, Jr., an African-American male, joined the Baton Rouge Police Department as a police officer. Mr. Alcorn retired in 2000. He filed a claim with the EEOC on October 24, 1995. On September 24, 1996, Mr. Alcorn sued the City, alleging federal and state claims of age and race discrimination, racial harassment, and unlawful retaliation. Additionally, Mr. Alcorn alleged a state claim of intentional infliction of emotional distress.
The suits were consolidated for trial. On May 13, 1999, the City filed a motion for summary judgment. The trial court granted the motion and rendered judgment, dismissing both plaintiffs' claims in their entirety. The plaintiffs appealed that judgment. On appeal, this court affirmed the dismissal of the claims of age discrimination based on prescription. This court further determined that summary judgment was inappropriate as to the claims of racial discrimination, racial harassment, and retaliation, as genuine issues of material fact existed concerning the factual allegations, and remanded the case for trial of those issues. Alcorn v. City of Baton Rouge c/w Burns v. City of Baton Rouge, 99-2464, 99-2465 (La.App. 1 Cir. 11/3/00) (unpublished opinion).
The matter was tried before a jury on January 7-14, 2002. After trial, the jury entered a verdict in favor of the plaintiffs. The trial court rendered judgment in accordance with that verdict, awarding Mr. Alcorn $300,000.00 for race-based harassment, $200,000.00 for racial discrimination, and $50,000.00 for unlawful retaliation. It further rendered judgment in favor of Mr. Burns in the sums of $300,000.00 for race-based harassment and $200,000.00 for racial discrimination. The City appealed, asserting numerous assignments of error. After hearing the matter, we rendered judgment affirming the awards for race-based harassment and racial discrimination, but reversing the award to Mr. Alcorn for unlawful retaliation. Alcorn, 02-0952, 02-0953, 851 So.2d 1194. The City sought writs with the Louisiana Supreme Court. The supreme court determined that we erred in concluding the exception of prescription was not properly raised on appeal. In a per curiam opinion, the supreme court vacated our judgment and remanded the case to this court to determine the merits of the City's defense of prescription.[2]Alcorn, 03-2682, 863 So.2d 517. Considering the mandate of the Louisiana Supreme Court, we now address the issue of whether the plaintiffs' federal and state claims have prescribed.

DISCUSSION
The plaintiffs assert claims for racial discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et *388 seq. and La. R.S. 23:1006,[3] and claims for intentional infliction of emotional distress. Because Louisiana's anti-discrimination law is similar in scope to the federal Title VII prohibition against discrimination, Louisiana courts have looked to federal jurisprudence to interpret Louisiana discrimination laws. King v. Phelps Dunbar, L.L.P., 98-1805, p. 7 (La.6/4/99), 743 So.2d 181, 187; Bustamento v. Tucker, 607 So.2d 532, 539 n. 9 (La.1992). Following the United States Fifth Circuit, Louisiana courts have consistently applied the one-year prescriptive period found in La. Civ.Code art. 3492 to claims brought under La. R.S. 23:1006. See King, 98-1805 at p.7, 743 So.2d at 187, and cases cited therein. This one-year prescriptive period commences to run from the day injury or damage is sustained. La. Civ.Code art. 3492. Claims for intentional infliction of emotional distress are also governed by the one-year prescriptive period for delictual actions in La. Civ.Code art. 3492. Bustamento, 607 So.2d at 541. The prescriptive period for the federal claims differs, however, from that of the state claims. Under substantive federal law, a Title VII plaintiff must file a claim of discrimination with the EEOC no more than 180 days after the alleged discriminatory act occurred. 42 U.S.C. § 2000e-5(e)(1). In a state that has an entity with the authority to grant or seek relief with respect to the unlawful practice (a deferral state), this filing period is extended to 300 days if the employee initially filed a grievance with that agency. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002). Louisiana is a deferral state. La. R.S. 51:2231.[4] Therefore, the 300-day filing period applies to the plaintiffs' federal claims.
Louisiana jurisprudence dictates that prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished. Thus, when there are two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted. King, 98-1805 at pp. 7-8, 743 So.2d at 187-188; Bustamento, 607 So.2d at 537.
In order to resolve the prescription issue before us, it is necessary to analyze the nature of the plaintiffs' cause of action. King, 98-1805 at p. 8, 743 So.2d at 188; Bustamento, 607 So.2d at 538. We note initially that a cause of action for intentional infliction of emotional distress in a workplace is usually limited to cases involving a pattern of deliberate, repeated harassment over a period of time. Bustamento, 607 So.2d at 538; White v. Monsanto Co., 585 So.2d 1205, 1210 (La.1991). Here, the essence of the plaintiffs' claims of intentional infliction of emotional distress, like their claims for racial harassment, is the creation of a hostile work environment. In this situation, Louisiana courts apply the continuing violations analysis utilized in considering harassment claims under federal and state anti-discrimination laws to claims of intentional infliction of emotional *389 distress. Bustamento, 607 So.2d at 541. Thus, the analysis of the substantive law applicable herein is the same for all claims asserted by the plaintiffs.
The federal courts have recognized the existence of hostile environment harassment theory in race discrimination cases. King, 98-1805 at p. 8, 743 So.2d at 188. In the National Railroad Passenger Corporation case, the Supreme Court of the United States noted that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." Nat'l R.R. Passenger Corp., 536 U.S. at 115, 122 S.Ct. at 2073. The court further stated:
The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.... Such claims are based on the cumulative effect of individual acts.
... Thus, "[w]hen the workplace is permeated with `discriminatory intimidation, ridicule, and insult,' that is `sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated."
In determining whether an actionable hostile work environment claim exists, we look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." To assess whether a court may, for the purposes of determining liability, review all such conduct, including those acts that occur outside the filing period, we again look to the statute. It provides that a charge must be filed within 180 or 300 days "after the alleged unlawful employment practice occurred." A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.
That act need not, however, be the last act. As long as the employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has "occurred," even if it is still occurring. Subsequent events, however, may still be part of the one hostile work environment claim and a charge may be filed at a later date and still encompass the whole.
... Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.
....
... A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment *390 practice, and if so, whether any act falls within the statutory time period.
Nat'l R.R. Passenger Corp., 536 U.S. at 115-120, 122 S.Ct. at 2073-2076 (footnotes and citations omitted).
In Bustamento, our supreme court held that in an action brought under Louisiana tort law for intentional infliction of emotional distress caused by the creation of a hostile work environment (albeit Bustamento involved sexual harassment in the workplace), "when the acts or conduct are continuous on an almost daily basis, by the same actor, of the same nature, and the conduct becomes tortious and actionable because of its continuous, cumulative, synergistic nature, then prescription does not commence until the last act occurs or the conduct is abated." Bustamento, 607 So.2d at 542.
The City argues that the claims for racial discrimination and harassment are untimely under both the state and federal prescriptive periods, and therefore, are not actionable. In response, the plaintiffs argue that their claims for racial discrimination and harassment have not prescribed because they were subjected to a continuously hostile work environment caused by the racially discriminatory practices of the City and this continued and cumulated over a period of time until they were forced to resign. In other words, the plaintiffs claim they were subjected to continuing, on-going, and unabated race-based harassment and discrimination, from the date each was hired through the date each was forced from their respective careers with the Baton Rouge Police Department.
After a thorough review of the entire record, we find that a jury could reasonably determine the plaintiffs were subjected to race-based harassment, which created a hostile work environment, continually throughout their careers. Evidence was presented that shows that they were subjected to racial epithets, slurs, and jargon, levied at them directly or in their presence on virtually a dally basis throughout their employment, spanning well over twenty years. A jury could reasonably conclude that the racially hostile work environment unreasonably interfered with their work performance and affected their employment.
Also, a reasonable jury could conclude that the plaintiffs were subjected to recurring acts of discrimination. Evidence was presented to show that both men were denied overtime, training opportunities, advancement in their careers, and the ability to effectively perform their jobs, and both men were ultimately forced to leave their chosen careers, which took place well after these lawsuits were filed.
Here, the jury obviously concluded that actions of race-based discrimination and harassment continued throughout the plaintiffs' employment  they never ceased. The jury was reasonable in concluding that the evidence overwhelmingly established he type of continual and cumulative acts necessary to constitute an actionable continuing violation claim. Thus, under Bustamento and National Railroad Passenger Corporation, the plaintiffs' federal and state claims of hostile work environment, as well as their claims for intentional infliction of emotional distress, are not prescribed.

CONCLUSION
For the foregoing reasons, we deny the City's defense of prescription. We adopt and reinstate our prior opinion in Alcorn, 02-0952, 02-0953, 851 So.2d 1194, which reversed the trial court's award of $50,000.00 to William Alcorn for unlawful retaliation, but affirmed the trial court's judgment in all other respects. Costs of *391 these appeals in the sum of $955.04 are assessed to the City of Baton Rouge.
DEFENSE OF PRESCRIPTION DENIED; TRIAL COURT JUDGMENT REVERSED IN PART AND AFFIRMED IN PART.
McCLENDON, J., dissents and assigns reasons.
McCLENDON, J., dissenting.
For the following reasons, I respectfully dissent. In addressing the exception of prescription, the majority herein states that "a reasonable jury could conclude that the plaintiffs were subjected to recurring acts of discrimination" and that "the jury obviously concluded that actions of race-based discrimination and harassment continued throughout the plaintiffs' employment  they never ceased." The majority finds that "[t]he jury was reasonable in concluding that the evidence overwhelmingly establishes the type of continual and cumulative acts necessary to constitute an actionable continuing violation claim." Although, I agree that the jury correctly found that a hostile work environment existed at some point during plaintiffs' employment, I disagree that there was any finding by the jury of when said hostile work environment existed or ceased to exist. Therefore, the majority is erroneously employing the manifest error standard of appellate review set forth in the case of Stobart v. DOTD, 617 So.2d 880 (La.1993). This standard is properly utilized only when reviewing a factual finding of a trial court or jury. Herein, the jury never addressed the issue of prescription or any timeline as to when the discriminatory acts or hostile work environment occurred. There are no references in the jury verdict or in the jury charges to dates of the acts alleged by plaintiffs. As recognized by the Louisiana Supreme Court (and by the majority at footnote 2 of their opinion), "the trial court has never ruled on the issue of prescription." Alcorn v. City of Baton Rouge, 03-2682, p. 2 (La.1/16/04), 863 So.2d 517, 519. Accordingly, there is no underlying judgment on the issue of prescription for this court to review applying the manifest error standard. Rather, the Louisiana Supreme Court remanded this case to this court ordering us to address an issue not previously ruled on by the lower court. Therefore, I believe we must review the issue de novo and must determine from the record the dates that the discrete acts occurred and the dates that the hostile work environment existed.
The plaintiffs herein assert that their claims of racial discrimination and retaliation have not prescribed as they suffered numerous discriminatory and retaliatory acts from the date each was hired through the date each retired. After a careful review of the entire record and inspection of each record reference provided by counsel for the plaintiffs, I believe the evidence fails to support the plaintiffs' assertions that their claims are timely for two reasons. First, the plaintiffs failed to carry their burden of proving specific tortious acts that occurred within the prescriptive periods. Second, the plaintiffs knew they were the victims of a racial discrimination and failed to timely file suit.
In Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002), the Supreme Court reaffirmed that discrimination claims are to be divided into two categories: those based on discrete discriminatory acts, and those based on a hostile work environment. Nat'l R.R. Passenger Corp. v. Morgan, 122 S.Ct. at 2071, 122 S.Ct. 2061. Parties who assert discrete retaliatory or discriminatory acts, such as termination, failure to promote, denial of transfer, or refusal to hire, must file a charge within the prescriptive period or lose the ability *392 to recover for it. Because each of these acts could independently support a discrimination claim, the prescriptive period runs independently for each discrete act. Nat'l R.R. Passenger Corp. v. Morgan, 122 S.Ct. at 2071. Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each act starts a new clock for filing within the prescriptive period after the act occurred. Nat'l R.R. Passenger Corp. v. Morgan, 122 S.Ct. at 2073.
In contrast, hostile environment claims, by their very nature, involve repeated conduct, and "in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Nat'l R.R. Passenger Corp. v. Morgan, 122 S.Ct. at 2073. Because hostile work environment claims attack one continuing unlawful employment practice, the prescriptive period does not apply so strictly to these claims. Nat'l R.R. Passenger Corp. v. Morgan, 122 S.Ct. at 2075; Huckabay v. Moore, 142 F.3d 233, 240 (5th Cir.1998); Bustamento v. Tucker, 92-0523, p. 12 (La.10/19/92), 607 So.2d 532, 539-40. A plaintiff alleging a hostile work environment can recover damages for acts occurring outside the prescriptive period so long as an act contributing to the hostile environment occurred within the statutory period. Nat'l R.R. Passenger Corp. v. Morgan, 122 S.Ct. at 2075.
In order to prevail on a continuing violation theory, the plaintiffs must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action. Huckabay v. Moore, 142 F.3d 233, 240 (5th Cir.1998); see also Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 352 (5th Cir.2001). In determining whether a continuing violation occurred, the court must consider whether the discriminatory acts involve the same type of discrimination, the frequency of the acts, and whether the acts involve a "degree of permanence which should trigger an employee's awareness and duty to assert his or her rights[.]" Berry v. Bd. of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983).[1] The acts or conduct must be continuous, cumulative, and synergistic to become tortious and actionable. Bustamento v. Tucker, 92-0523, p. 15 (La.10/19/92), 607 So.2d 532, 542. The unlawful employment practice must be a part of the same hostile work environment claim in order for an employee to recover for previous acts. Nat'l R.R. Passenger Corp. v. Morgan, 122 S.Ct. at 2073.
Having previously found that a hostile environment existed and that discrete discriminatory acts occurred, the only questions before this court are the dates of said discrete discriminatory acts and the dates that said hostile work environment existed.
Herein, the plaintiffs allege numerous discrete discriminatory acts. The most recent of these acts occurred in November of 1994, when plaintiffs allegedly were demoted from positions as team leaders on the Special Response Team. The plaintiffs' complaints with the EEOC were filed on October 23 and 24, 1995. Therefore, these alleged unlawful acts, which occurred in November of 1994, as well as all prior alleged unlawful acts, clearly occurred outside the 300-day filing period to support a federal claim. Mr. Alcorn filed his lawsuit *393 on September 24, 1996, and Mr. Burns filed his lawsuit of October 6, 1996. Therefore, the alleged unlawful demotions and all prior alleged unlawful acts fall outside the one-year prescriptive period applicable to state claims. Thus, the claims for discrete discriminatory acts are untimely and no longer actionable.
Plaintiffs further assert that they have been subjected to race-based harassment that created a hostile work environment continually throughout their careers. In support of their claims of a hostile work environment, the plaintiffs assert that racial epithets, slurs, jargon and talk were made to them directly and indirectly throughout their employment. In this case, virtually all of the plaintiffs' allegations of this type occurred outside the state and federal prescriptive periods. As reflected in the reinstated opinion of this court, numerous, actionable instances occurred in the 1970's and 1980's, and some continued into the 1990's. For example, Mr. Alcorn's experiences at the police academy occurred in the early 1970's. Various racial comments were made to Mr. Alcorn from that time through the time he left the Juvenile Division in 1984. Mr. Alcorn testified that he heard the "N" word on the radio up until the mid-1980's. He transferred to Internal Affairs in 1984 and remained there for approximately eleven years. He testified that, during that period, Chief Deputy Phillips made some comment about race on a daily basis. Specifically, Mr. Alcorn testified that the last comment made directly to him occurred "in the mid-90's" when he was applying for a promotion to Head of Internal Affairs and Chief Deputy Phillips referred to him as "H.N.I.C." However, it is unclear from the record when this comment actually occurred. Therefore, Mr. Alcorn failed to sufficiently prove that this statement occurred within the prescriptive period. Furthermore, evidence of subsequent alleged instances is limited to broad generalizations. Specifically, the evidence in the record of such activity that occurred within the prescriptive periods is limited to broad allegations without evidence of specific dates, sources, or factual circumstances.
At trial, Mr. Burns' testimony was much more limited than that of Mr. Alcorn. He testified that he began the police academy in 1972 and experienced various acts of race discrimination as set forth in the reinstated majority opinion. He also testified that between 1977 and 1985 derogatory references concerning black people occurred fairly frequently on the radio. He further testified that upon transferring to Internal Affairs in the early 1990's he heard Deputy Chief Phillips tell ethnic jokes and use the words "honky" and "nigger." Absent from his testimony are allegations of specific acts that occurred during the prescriptive periods.
Both plaintiffs were thoroughly examined by attorneys for the plaintiffs and for the defendant. However, the testimony of both plaintiffs, and the record as a whole, is void of any specific allegations of any discriminatory acts that occurred during the year prior to the filing of their suits or within 300 days of the filing of their claims with EEOC. Rather, the evidence is limited to broad statements that derogatory statements continued throughout their employment up until the time each retired, with no specific dates of occurrences, no specific statements made, and no identification of the source of these alleged racial epithets. Plaintiffs rely on this evidence to toll prescription. However, this scant evidence is insufficient to carry the plaintiffs' burden of proving conduct that is continuous, cumulative, and synergistic in nature and perpetrated by the same actor on an almost daily basis. See Bustamento v. Tucker, 92-0523, p. 15 (La.10/19/92), 607 *394 So.2d 532, 542. Therefore, it is insufficient to defeat an exception of prescription.
Alternatively, applying the notice requirement of Berry as this court did in affirming the grant of summary judgment in favor of the defendant on the issue of age discrimination in Alcorn v. City of Baton Rouge c/w Burns v. City of Baton Rouge, 99-2464, 99-2465 (La.App. 1 Cir. 11/3/00) (unpublished opinion), it is clear that the acts alleged to have occurred, while with the Special Response Team in November of 1995, were sufficient to "trigger" the plaintiffs'"awareness of and duty to assert" their rights. See Berry v. Bd. of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983). These acts occurred outside the prescriptive periods for both the state and federal causes of action, thus rendering the claims untimely. To find otherwise would allow an employee to lie in wait until, as in this case, they are ready to retire to assert a stale claim when said suit could have been brought in a much more timely manner. Filing suit more than two decades after discriminatory actions began defeats the public policy behind anti-discrimination statutes, which is not only to compensate the victim of said discrimination, but also to stop discriminatory practices. Further, allowing such stale actions, despite an employee having notice sufficient to assert said claim, is inherently unjust to the employer. As pointed out by Justice O'Connor in her dissent in National Railroad, such an employee could, subject only to the uncertain restrictions of equity, "sleep on his or her rights for a decade, bringing suit only in year 11 based in part on actions for which a charge could, and should, have been filed many years previously.... Allowing suits based on such remote actions raises all the problems that statutes of limitations and other similar time limitations are designed to address." Nat'l R.R. Passenger Corp. v. Morgan, 122 S.Ct. at 2078-9. Clearly, the purpose of prescription statutes is to promote justice by preventing the filing of claims that have been allowed to slumber until witnesses and evidence are no longer available and memories have long since faded.[2]
I believe that fairness must exist for both employees as well as employers. To allow employees to litigate stale claims, despite an awareness on their part of a duty to assert said claims, denies justice to the employer who is called upon to defend said stale claims. Accordingly, I would find that the plaintiffs' federal and state claims of discrimination and harassment are untimely, and I would dismiss the plaintiffs' lawsuits.
NOTES
[1] Initially, Mr. Burns also asserted a claim of unlawful retaliation. At the beginning of trial, however, the trial judge severed that claim, and it is not part of this appeal.
[2] The supreme court concluded that an exception of prescription was preserved by the City's assertions, in a pre-trial motion for summary judgment, that the actions for racial discrimination and harassment had prescribed. The supreme court further noted that the trial court's judgment on the merits "contained no ruling on the prescription issue as it related to the race-discrimination/harassment claims." Alcorn, 03-2682 at p. 2, 863 So.2d at 519. Although the trial court has never ruled on the issue of prescription and no exception of prescription was timely filed with this court, the supreme court remanded this matter to our court with the express directive that we determine whether the plaintiffs' claims have prescribed.
[3] Prior to a 1997 legislative revision, La. R.S. 23:1006 prohibited intentional discrimination on the basis of race, color, religion, sex, disability, or national origin. La. R.S. 23:1006B. With the promulgation of La. Acts 1997, No. 1409, §§ 1 and 4, La. R.S. 23:1006-1008 were repealed and La. R.S. 23:331-334 were enacted relating to discrimination in employment due to race, color, religion, sex, disability, or national origin.
[4] La. R.S. 51:2231, et seq. provides for the execution of federal anti-discrimination laws in the State of Louisiana and creates the Louisiana Commission on Human Rights, which has the power to adjudicate claims of employment discrimination pursuant to La. R.S. 51:2231(C) and 51:2257.
[1] In Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002), the Supreme Court recognized the Fifth Circuit's multi-factor test to determine application of the continuing violation doctrine as set forth in Berry v. Bd. of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983).
[2] The majority in National Railroad recognized the danger of leaving employers defenseless against employees who unreasonably delay in bringing hostile work environment claims over a long period of time, thereby denying the employer prompt notice of the claim. Said majority noted that the employer could assert waiver, estoppel, and equitable tolling "when equity so requires." Nat'l R.R. Passenger Corp. v. Morgan, 122 S.Ct. at 2073. However, said common-law doctrines, such as laches and equity, do not prevail in Louisiana and are only available in rare and extraordinary circumstances. T.D. v. M.M.M., 98-0167, p. 3 (La.3/2/99), 730 So.2d 873, 876; Picone v. Lyons, 601 So.2d 1375, 1377 (La.1992). Thus, it would seem that under the majority's opinion, a plaintiff's right to bring suit under the Louisiana Anti-Discrimination Statute would far exceed his right to bring suit under Title VII.