# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 99-31121

_____


Deborah M. Horaist,

Plaintiff-Appellant,


versus


Doctor's Hospital of Opelousas;
Columbia/HCA Healthcare Corporation of Central Louisiana, Inc.;
Notami Opelousas, Inc.; Notami Hospital of Louisiana, Inc.;
Columbia/HCA Healthcare Corporation; James Bienvenue;
Greg Gibson; Mel Lagarde; Daryl Doise; Rick Thomason;
Seldon Deshotel, Jr., M.D.;
Continental Insurance companies; continental casualty company;
reliance insurance Company of Illinois;
CNA Insurance Company; Clarendon Lloyds;
Healthcare Indemnity, Inc.; and Lloyds of London,

Defendants-Appellees.


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

SEALED APPELLEE,

Plaintiff-Appellee,

VERSUS

SEALED APPELLANT 1; SEALED APPELLANT 2; SEALED APPELLANT 3;
SEALED APPELLANT 4; SEALED APPELLANT 5; SEALED APPELLANT 6;
SEALED APPELLANT 7; SEALED APPELLANT 8; SEALED APPELLANT 9,

Defendants-Appellants.

Appeals from the United States District Court
for the Western District of Louisiana

July 11, 2001

Before REYNALDO G. GARZA, HIGGINBOTHAM, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Deborah Horaist was fired by Doctor's Hospital of Opelousas, allegedly in retaliation for reporting unwelcome sexual advances from her supervisors. She sued the alleged harassers, the hospital, and several of its officers (collectively "defendants") under title VII, 42 U.S.C. § 1985(3), and state law. Defendants moved to disqualify Horaist's counsel on the ground that he had an intimate relationship with her.

The district court denied the motion but certified its ruling for interlocutory appeal under 28 U.S.C. § 1292(b). The court also dismissed most of Horiast's claims but certified its dismissal of her conspiracy claims and her state law claims for appeal under FED. R. CIV. P. 54(b).

Horaist appeals, contending that she properly raised claims under § 1985(3) and that her state law claims are not time-barred. We affirm and remand for further proceedings.

I.

Horaist was Director of Business Health Services for Doctor's Hospital from July 1995 to December 1996, during which time she was dating André Toce, her lawyer in this case. In November 1995, Toce sponsored a breast aug-

mentation surgery for her.

Horaist asserts that throughout her employment, she received unwelcome sexual advances and verbal harassment, including comments about her breasts, from Sheldon Deshotels, a physician on staff. Horaist reported Deshotels's behavior to Gibson and to the Chief Operations Officer and Chief Financial Officer. Gibson advised her to file a written complaint with him rather than with Human Resources. Horaist did not tell Toce about the sexual harassment at the time, nor did Toce notice anything while attending social functions at the hospital with her.

Horaist further claims that Gibson made repeated and unwelcome sexual advances toward her, including calling her residence, fondling her in a sexual manner, commenting explicitly about her body and the thoughts he had in connection therewith, and attempting to kiss her. She reported this behavior to the COO and CFO, who advised her to file a formal complaint.

After reporting Gibson, Horaist asserts that he made unrealistic demands on her schedule and that her duties changed from those of an executive manager to those of an errand girl. Further, Gibson purportedly suggested that she should have sexual relations with him if she wanted to keep her job. Horaist was fired in December 1996, allegedly in retaliation for reporting the harassment. After her termination, she earned money through a gift-basket business and interior decorating.

Horaist sued the corporate defendants and certain of their officers, Deshotels, and Gibson for retaliatory discharge, breach of contract, conspiracy to permit the sexual harassment or to force Horaist out of her position, and state

law claims of battery and intentional infliction of emotional distress. The defendants moved to disqualify Toce and his law firm on the ground that his intimate relationship with Horaist caused a conflict of interest and interfered with his ability to render independent professional judgment. Moreover, they claimed Toce was a necessary witness on the issues of liability and damages for emotional distress, because Horaist had discussed problems in her relationship with Toce with her therapist. Further, they argued that these conflicts should be imputed to Toce's firm.

The court dismissed the § 1985(3) conspiracy claims against all defendants, the state law claims against the corporate defendants, state law claims against Deshotels, and state law claims against Gibson for failure to state a claim on which relief could be granted. *See* FED. R. CIV. P. 12(b)(6). Only the breach of contract claim against Gibson and the contract and title VII claims against the corporate defendants remained. The court certified these claims for immediate appeal[1] and later dismissed all title VII claims against the individual defendants. Horaist now presents the issues certified for appeal by the district court, and the parties do not contest the propriety of that certification.[2]

---

[1] *See* FED. R. CIV. P. 54(b) (allowing a district court to "direct the entry of a final judgment as to one or more but fewer than all claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment").

[2] After Horaist filed her appeal, she reasserted all of her claims in a third amended complaint. She refused to withdraw the previously dismissed claims, and the district court struck them again. *See* FED. R. CIV. P. 12(f) (stating that the court (continued...)

3

## II.

The district court refused to disqualify Toce and his firm from representing Horaist, and it certified the ruling for an interlocutory appeal under 28 U.S.C. § 1292(b). On appeal, we consider whether (1) Toce was a necessary witness; (2) he had an impermissible conflict of interest; and (3) any disqualification should be imputed to his firm. We review the findings of fact for clear error and the application of the rules of ethical conduct *de novo. FDIC v. United States Fire Ins. Co.,* 50 F.3d 1304, 1311 (5th Cir. 1995).

"[D]isqualification cases are governed by state and national ethical standards adopted by the court." *Id.* at 1312 (quoting *In re Am. Airlines, Inc.,* 972 F.2d 605, 605 (5th Cir. 1992)). Ethical canons relevant to the district court's order include (1) the local rules for the Western District of Louisiana; (2) the American Bar Association's ("ABA's") Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility; and (4) the state rules of conduct. *See id.* The Rules of the Western District of Louisiana spe-cifically adopt the Rules of Professional Conduct of the Supreme Court of Louisiana. *See* LA. UNIFORM R. U.S. DIST. CT. LR83.2.4W. These rules are identical to the ABA's Model Rules of Professional Conduct in all relevant aspects. *See* LA. REV. STAT. tit. 37, ch. 4, art. XVI.

We interpret these rules as we would any other source of law. *In re Dresser Indus.,* 972 F.2d 540, 543 (5th Cir. 1992). In considering a disqualification motion, we view the rules in light of the litigant's rights and the public interest, considering "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *Id.* at 544.

### A.

Defendants contend that Toce is a necessary witness and thus should be disqualified. MODEL RULES OF PROF'L CONDUCT 3.7(a); LA. RULES OF PROF'L CONDUCT 3.7(a) (2000).[3] They believe he

---

[2](...continued)
may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter"). Defendants contend that the subsequent dismissal estops Horaist from seeking our review of the issues certified under rule 54(b).

We disagree. The presence of similar claims, either arising out of the same transaction or sharing factual elements, pending before the district court, does not strip us of jurisdiction to hear the certified issue on appeal. *See H & W Indus., Inc.* v. *Formosa Plastics Corp.,* 860 F.2d 172, 175 (5th Cir. 1988). If a factually identical claim may proceed in the district court during the pendency of the appeal, its disposition, by extension, cannot preclude the effect of our decision.

---

[3] The rule states:

(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would
(continued...)

4

must testify that Horaist did not tell him about the harassment at the time it occurred and that this fact is adverse to her. They also want Toce to testify to Horaist's emotional state and to her earnings in her gift-basket business and interior decorating.

If a lawyer must testify adversely to a client's interest, the client cannot waive the conflict. *See United States Fire Ins. Co.,* 50 F.3d at 1317. But, if a lawyer discovers during litigation that he "may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony would prejudice his client." MODEL RULES OF PROF'L CONDUCT 3.7(c); LA. RULES OF PROF'L CONDUCT 3.7(c). "Testimony is considered prejudicial under this Rule if it is so adverse to the client's side that the bar or the client might have an interest in discrediting the testimony," and the movant has the burden of establishing prejudice with specificity. *Smith v. New Orleans Fed. Sav. &*

*Loan Ass'n,* 474 F. Supp. 742, 749-50 (E.D. La. 1979) (internal quotation marks omitted).

Each item of information that Toce could provide is already available from another source, and defendants have failed to articulate how Toce's corroboration would prejudice Horaist. Horaist may testify to the nature of her relationship with Toce and to the fact that she did not reveal her harassment to him at the time. Other co-workers may shed light on Horaist's behavior with her alleged harassers. She may produce business records or testify to her earnings. Her psychologist, family, friends, and former co-workers can testify to her emotional state.[4]

Because his testimony is cumulative, Toce is not a necessary witness. His testimony corroborates Horaist's, so she has no interest in discrediting it. The defendants have not met their burden of demonstrating prejudice. *See id.* at 750.[5] In addition, when the attorney's participation as both lawyer and witness stands to prejudice only his own client, the opposing attorney should have no say in the matter. *United States Fire Ins. Co.,* 50 F.3d at 1315.

B.

---

[3](...continued)
>  work a substantial hardship on the client.

(b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or 1.9.

(c) If, after undertaking employment in contemplated or pending litigation, a lawyer learns, or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

MODEL RULES OF PROF'L CONDUCT 3.7(a); LA. RULES OF PROF'L CONDUCT 3.7(a) (2000).

---

[4] Defendants also want Toce to testify that he paid for Horaist's breast augmentation surgery. Although that is irrelevant to the sexual harassment suit, Horaist can testify to it herself.

[5] Because Toce is not a necessary witness, we need not reach the question whether the substantial hardship to Horaist outweighs the appearance of impropriety and other policy considerations. *Cf., e.g.,* MODEL RULE 3.7(a); *United States Fire Ins. Co.,* 50 F.3d at 1316 (noting that the necessary witness rule balances the likelihood of public suspicion against a party's right to counsel of choice).

Defendants argue that Toce's representation of Horaist creates a conflict of interest. "A lawyer shall not represent a client if the representation of that client may be materially limited by . . . the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation." MODEL RULES OF PROF'L CONDUCT 1.7(b); LA. RULES OF PROF'L CONDUCT 1.7(b).

Defendants also claim that Toce cannot exercise independent professional judgment because of his past relationship. "In representing a client, a lawyer shall exercise independent professional judgment and render candid advice." MODEL RULES OF PROF'L CONDUCT 2.1; LA. RULES OF PROF'L CONDUCT 2.1. A sexual relationship with a client that arises during the course of the representation may create a conflict between the professional and personal interests of the lawyer and interfere with the lawyer's professional judgment.[6]

Horaist and Toce assert, however, that their relationship ended before the litigation began. Moreover, Horaist consented to the representation after full disclosure, thereby waiving the conflict of interest. Even if the relationship lasted longer than they admit, all parties agree that Horaist and Toce are not now intimately involved. Prior sexual relationships do not give rise to the type of ethical violation requiring disqualification under the rules.[7]

C.

Defendants argue that Toce's conflict of interest should be imputed to the firm. "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9, or 2.2." MODEL RULES OF PROF'L CONDUCT 1.10(a); LA. RULES OF PROF'L CONDUCT 1.10(a). Rule 1.10 concerns only Toce's alleged conflict of interest, not his potential status as a witness or his ability to render a candid opinion. As discussed above, Horaist has waived any conflict that may arise under rule 1.7 by her consent to the representation after full disclosure.

Louisiana courts have held that if an attorney is disqualified under rule 3.7, his presence as a witness may create a conflict of interest that may be imputed to the firm.[8] We

---

[6] *See, e.g., In re Gore,* 752 So. 2d 853, 855 (La. 2000) (affirming the suspension of an attorney who had an affair with a client he represented in a divorce); *In re Touchet,* 753 So. 2d 820, 823 (La. 2000) (disbarring attorney for unwanted sexual advances to clients, including solicitation of sexual favors in lieu of fees); *In re Schambach,* 726 So. 2d 892, 895-96 (La. 1999) (involving an attorney who had an extra-marital affair with a client after he began representing her, borrowed money from her, and refused to repay it); *In re Ashy,* 721 So. 2d 859, 867-68 (La. 1998) (suspending a lawyer for two years for unwanted sexual advances).

[7] *Cf. generally* Ralph H. Brock, *Sex, Clients, and Legal Ethics,* 64 TEX. BAR J. 234 (2001) (lauding the emergence of specific disciplinary rules prohibiting a lawyer from having a sexual relationship with a client during the course of representation).

[8] *See Bellino v. Simon,* 1999 WL 1277535 (E.D. La. 1999) (disqualifying counsel and his firm because counsel was a necessary witness, his testimony would contradict his client's assertions, and his actions were in question). *See also Lange v. Orleans Levee Dist.,* 1997 WL 668216 at *5 (E.D. (continued...)

concluded above that Toce is not a necessary witness, and his potential testimony is hardly adverse in the sense that the Model Rules contemplate. Therefore, Toce and his firm may continue to represent Horaist.

III.

Horaist contends the court improperly dismissed, as time-barred, her claims of intentional interference with contract, intentional infliction of emotional distress, battery, discrimination, and retaliation. Under Louisiana law, each of these delictual actions has a limitations period of one year. *See* LA. CIV. CODE ANN. art. 3492 (West 2001).

Horaist was fired on December 5, 1996. She filed her claim with the EEOC on January 2, 1997. She received her right-to-sue letter on May 8, 1998, and sued the same day. She admits that the statute of limitations ran before she filed her claim, but she believed that because her state law claims were supplemental to her title VII claims, the EEOC administrative proceeding would toll the statute of limitations on the state claim. Moreover, Louisiana law requires that "[a] party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation." LA. CODE CIV. PROC. ANN. art. 425 (West 2001).

In 1997, the legislature revised the employment discrimination statute, LA. REV. STAT. ANN. § 23:1006, to toll the prescriptive period for state causes of action pending EEOC review.[9] The relevant portion of the amended statute reads:

> Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this one-year
>
> prescriptive period shall last longer than six months.

LA. REV. STAT. ANN. § 23:303(D) (West 2001). If this statute applies to Horaist's claims, they are timely, because she filed suit within seventeen months.

Louisiana law instructs that if, as here, the legislature has not expressed an intent, the court should determine whether the statute is procedural, substantive, or interpretive. *See King v. Phelps Dunbar, L.L.P.,* 743 So. 2d 181, 185 (La. 1999). Article 6 of the Louisiana Civil Code Annotated provides that, in the absence of legislative expression to the contrary, changes in the law during the course of a suit that are procedural and interpretive apply both prospectively and retroactively, but those that are substantive apply only prospectively. *Id.* at 185. Louisiana courts have suggested that prescriptive statutes are

---

[8](...continued) La. 1997) (disqualifying plaintiff's lawyers and the rest of their firm because the lawyers were likely to be called as witnesses to testify adversely to the client).

[9] The old § 23:1006 did not have a prescriptive period, but the courts drew on tort analogies to assign a one-year prescriptive period. *See Winbush v. Normal Life, Inc.,* 599 So. 2d 489, 491 (La. App.—3d Cir. 1992).

procedural. *See, e.g., Dozier v. Ingram Barge Co.,* 706 So. 2d 1064, 1066 (La. App.—4th Cir. 1998).

If, however, the retroactive application of a procedural statute "has the effect of making a change in the substantive law"or creates a new liability, it will apply only prospectively. *See Thomassie v. Savoie,* 581 So. 2d 1031, 1034 (La. App.—1st Cir.), *writ denied*, 589 So. 2d 493 (La. 1991). An otherwise procedural statute may not apply retroactively if it is "inextricably intertwined" with a statute that creates a new substantive obligation. *Id.*

In *King*, 743 So. 2d at 185, the court determined that chapter 3-A of title 23, which codified the 1997 Louisiana discrimination statute, "create[d] and define[d] the rights and duties of employers and employees relative to discrimination in the workplace." "[T]he enactment of these provisions . . . is substantive and cannot be retroactively applied." *Id.*

Although *King* does not hold specifically that the substantive provisions of the statute are inextricably intertwined with the procedural ones, it explains that the legislature intended an overall revision of the law. *See id. Thomassie* instructs that where a procedural provision is a part of an overall revision of the law, that provision is "inextricably intertwined" with the substantive provision. *Thomassie,* 581 So. 2d at 1034. Accordingly, § 23:303(D) cannot apply retroactively, and Horaist's state law employment discrimination claim is time-barred.

Horaist urges that this tolling provision also applies to her claims of battery, retaliation, intentional infliction of emotional distress, and tortious interference with contract. Even had we found § 23:303(D) applicable retroactively, Louisiana courts have held that the one-year

statute of limitations for delictual actions still applies.[10]

## IV.

Horaist appeals the dismissal of her conspiracy claims brought under § 1985(3).[11] The

---

[10] *See Roth v. N.J. Malin & Assocs.,* 1998 WL 898367, at *2 (E.D. La. 1998) (holding that the prescriptive period of § 23:333(C), now codified at § 23:303(D), applies only to causes of action arising under Chapter 3-A of Title 23, which does not include intentional infliction of emotional distress, or retaliatory discharge). The statute similarly does not provide a cause of action for tortious interference with contract, so the prescriptive period would not be tolled for this claim, either.

[11] The statute reads:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do,

(continued...)

8

district court properly dismisses a claim under rule 12(b)(6) if "it appears beyond doubt that the plaintiff may prove no set of facts which would entitle him to relief." *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000). To state a cognizable claim under § 1985(3), Horaist must allege that (1) a racial or class-based discriminatory animus lay behind the conspiracy and (2) the conspiracy aimed to violate rights protected against private infringement.[12] *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267-68 (1993) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)); *United Bhd. of Carpenters v. Scott,* 463 U.S. 825, 833 (1983).

### A.

---

[11](...continued)
or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

[12] In this circuit, a § 1985(3) claim must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus." *Wong v. Stripling,* 881 F.2d 200, 202-03 (5th Cir. 1989).

Horaist's conspiracy claim seems to reference title VII violations exclusively: "Defendants conspired with one another to create a pretext for DEBBIE's termination and conspired with each other to cover up the retaliatory discharge." To the extent the claims stem from title VII, she may not use § 1985(3) as a remedy.[13]

### B.

Horaist attempts to evade *Novotny*'s bar by explaining that her § 1985(3) claim includes her state law claims for breach of contract, tortious interference with contract, intentional infliction of emotional distress, discrimination, retaliation, and battery. Although, as we have said, the latter five claims are time-barred, the breach of contract claim remains before the district court.

We need not consider whether § 1985(3) protects against interference with state contractual rights, because Horaist's conspiracy claim so plainly lacks the necessary element of invidious discrimination. "In this circuit, we require an allegation of a race-based conspiracy" to present a claim under § 1985(3). *Bryan v. City of Madison,* 213 F.3d 267, 276 (5th Cir. 2000), *cert. denied,* 121 S. Ct. 1081 (2001).[14] Horaist has alleged no racial ani

---

[13] *See Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 378 (1979) (holding that "§ 1985(3) may not be invoked to redress violations of Title VII").

[14] *See also Newberry v. E. Tex. State Univ.*, 161 F.3d 276, 281 n.2 (5th Cir. 1998) (noting that the Supreme Court has never held that non-racial animus is sufficient); *Deubert v. Gulf Fed. Sav. Bank,* 820 F.2d 754 (5th Cir. 1987). The Eleventh Circuit's holding that § 1985(3) applies to conspiracies grounded in sex-based animus (continued...)

mus, so her claim fails; the district court correctly dismissed it under FED. R. CIV. P. 12(b)(6).

The judgments and orders appealed from are AFFIRMED, and this matter is REMANDED for further proceedings.

---

[14](...continued)
perpetrated under color of state law may seem in tension with Fifth Circuit precedent. *See Lyes v. City of Riviera Beach,* 166 F.3d 1332, 1336-40 (11th Cir. 1999). In fact, however, it does not squarely contradict our prior holdings.

The *Lyes* court declared sex-based animus actionable where plaintiffs had raised a charge of conspiracy to violate the Equal Protection Clause. *Id.* at 1336. We recognized in *Wong* that a plaintiff could raise such a claim under § 1985(3). *See Wong,* 881 F.2d at 203 (dismissing the claim for failure to allege state action). We also noted that § 1985(3) does not confer substantive rights. *Id.* Thus, in *Lyes,* the Eleventh Circuit needed to account for the special question presented by the interaction of the Equal Protection Clause with § 1985(3).

*Lyes*'s statement that "class-based" discrimination for purposes of § 1985(3) is coterminous with the suspect classes of equal protection analysis (at least with regard to sex) may have been appropriate where the underlying right was equal protection itself. *Cf. Lyes,* 166 F.3d at 1338. We have never been presented with this precise question, and we express no view on it now.