# United States Court of Appeals
## for the Federal Circuit

———————————

**RING PLUS, INC.,**
*Plaintiff-Appellant,*

v.

**CINGULAR WIRELESS CORP., CINGULAR WIRELESS II LLC,
CINGULAR WIRELESS LLC, AND AT&T WIRELESS SERVICES, INC.,**
*Defendants-Appellants.*

———————————

2009-1537

———————————

Appeal from the United States District Court for the Eastern District of Texas in case No. 5:08-CV-0042, Judge David J. Folsom.

———————————

Decided: August 6, 2010

———————————

JERRY L. MOWERY, JR., Law Offices of Jerry L. Mowery, Jr., of Beverly Hills, California, argued for plaintiff-appellant.

LARRY D. CARLSON, Baker Botts LLP, of Dallas, Texas, argued for defendants-appellees. With him on the brief were SAMARA L. KLINE, DOUGLAS M. KUBEHL and DAVID O. TAYLOR.

_____

Before LOURIE, GAJARSA, and MOORE, *Circuit Judges*.

MOORE, *Circuit Judge*.

Ring Plus, Inc. (Ring Plus) appeals the final judgment of the United States District Court for the Eastern District of Texas that U.S. Patent No. 7,006,608 (the '608 patent) is unenforceable for inequitable conduct. Ring Plus also appeals the court's grant of summary judgment that defendants-appellants Cingular Wireless Corp., Cingular Wireless II LLC, Cingular Wireless LLC, and AT&T Wireless Services, Inc. (collectively, Cingular) do not infringe any claim of the '608 patent. Finally, Ring Plus appeals the court's denial of its motion to disqualify Cingular's counsel for allegedly improper ex parte party communications. For the following reasons, we reverse the judgment of unenforceability, affirm the grant of summary judgment of noninfringement, and affirm the denial of Ring Plus's motion to disqualify counsel.

## I.    BACKGROUND

Ring Plus is the assignee of the '608 patent, which is titled "Software Algorithm and Method Enabling Message Presentation During a Telephone Ringing Signal Period." The '608 patent discloses a software based algorithm and method for generating and delivering messages over a phone line during a "ringing signal" period. '608 patent col.3 ll.61-64, col.4 ll.43-52. Claim 1 of the '608 patent claims a software based algorithm for operation of a telephone system in which a generated sound presentation can replace or overlay a ring-back signal. Claim 9, the only other independent claim at issue, is a method claim that recites limitations generally analogous to those of claim 1. *Id.* col.19 ll.10-32.

Ring Plus sued Cingular, alleging that Cingular's Answer Tones service infringed claims 1-3, 5, and 9-10 of the '608 patent. Answer Tones is a paid service that allows Cingular subscribers to select songs and other entertainment that callers will hear after dialing the subscriber's telephone number. Cingular raised various defenses, including noninfringement and unenforceability of the '608 patent.

The district court issued a claim construction order, in which it determined that the steps of the asserted claims must be performed in a specific order. In particular, the court held that step 1c) (determining whether the recipient line is busy) must be performed before step 1d) ("allowing for a sound presentation" if the recipient line is not busy, and terminating the call without a sound presentation if the line is busy). Under the court's construction, the claims at issue determine whether the recipient line is busy before allowing a sound presentation or terminating the call.

Cingular filed a motion for summary judgment of noninfringement after the close of discovery, arguing that Answer Tones plays a sound presentation before it determines whether the recipient's phone line is busy. Because Answer Tones does not satisfy the required order of the steps, Cingular argued, it does not infringe. Ring Plus filed a motion for further claim construction, asserting that the court should construe the limitations of claim 1 such that step 1b) (introducing a sound presentation) could occur before either step 1c) or 1d). The court denied Ring Plus's motion. In view of the required order of the steps, the court explained, the claimed algorithm necessarily performs the "introducing a sound presentation" step after it determines the status of the recipient's telephone line.

With respect to Cingular's motion for summary judgment of noninfringement, the court observed that Ring Plus's expert acknowledged that Answer Tones plays a presentation before it determines whether the recipient's telephone line is busy. Because the asserted claims, as construed, each require determining the status of the recipient line before allowing a sound presentation, the court found that there was no literal infringement. The court also found that there was no infringement under the doctrine of equivalents due to prosecution history estoppel. Therefore, the court granted Cingular's motion for summary judgment of noninfringement.

The court denied Ring Plus's motion to disqualify Cingular's counsel for allegedly improper ex parte communications with a Ring Plus director. The court then held a bench trial on the issue of inequitable conduct and found the '608 patent to be unenforceable due to material misrepresentations made during prosecution regarding two prior art references. Ring Plus appeals, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II.　DISCUSSION

On appeal, Ring Plus argues that the district court abused its discretion in holding the '608 patent unenforceable for inequitable conduct. Ring Plus also argues that the court erred in construing the claims and that the entry of summary judgment of noninfringement must be reversed under the correct construction. Finally, Ring Plus argues that the court abused its discretion in refusing to disqualify Cingular's counsel. We address each of these issues in turn.

### A. Inequitable Conduct

We have established a two-part test for determining whether a patent is rendered unenforceable for inequita-

ble conduct. To successfully prove inequitable conduct, the accused infringer "must present evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the [PTO]." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008) (citation omitted). The accused infringer must prove "at least a threshold level of each element--i.e., both materiality and intent to deceive . . . by clear and convincing evidence." *Id.* If the accused infringer meets this evidentiary burden with respect to both materiality and intent, "the district court must still balance the equities to determine whether the applicant's conduct before the PTO was egregious enough to warrant holding the entire patent unenforceable." *Id.*

Where a district court has made fact findings as to materiality and deceptive intent after a bench trial, we review those findings for clear error and the ultimate decision on inequitable conduct for abuse of discretion. *Larson Mfg. Co. of S.D. v. Aluminart Prods.*, 559 F.3d 1317, 1327 (Fed. Cir. 2009).

### 1. Misrepresentation of Material Fact

At trial, Cingular claimed that applicants misrepresented the substance of two references, U.S. Pub. No. 2001/0051517 (Strietzel) and U.S. Patent No. 4,811,382 (Sleevi).[1] Cingular alleged that applicants misrepresented these references at two points: first, in the Back-

---

[1] Strietzel relates to a telecommunications advertising system that includes a "processing means" that selectively associates advertisements with communications. Strietzel para.[0007]. Sleevi relates to a system for applying messages to the line of a caller during a "ringback" period of a telephone call. Sleevi col.1 ll.17-10.

ground of the Invention of the '608 patent; and second, in an amendment submitted during prosecution (Amendment B). In the Background, applicants identified Strietzel and Sleevi as related art and stated that "[i]n each of the aforesaid [Strietzel and Sleevi references], there is no algorithm or software proposed for operating the telephone system. Thus, Streitzel [sic] and Sleevi both propose hardware based systems, *but no software to operate those systems*." '608 patent col.3 ll.25-29 (emphasis added). In Amendment B, applicants asserted that they had "very carefully examined" Strietzel and Sleevi and noted that "one of the distinctions between the applicant's system and . . . any other reference known to the applicant is the fact that the applicant's system only generates [a] message when the phone line between the caller and the recipient is not busy." J.A. 10363. The court found that Strietzel and Sleevi disclose software-based algorithms and playing a sound presentation only when the recipient line is not busy. Therefore, the court found that applicants' statements in the Background and Amendment B were material misrepresentations.

Ring Plus argues that the statements in the Background and Amendment B are not misrepresentations because they are not false. With respect to the Background statement, the district court observed that Figure 1 of Strietzel depicts a telecommunications advertising system that includes various "computer-related components," such as a message database, a processing means, a router, and the Internet. *Ring Plus, Inc. v. Cingular Wireless LLC*, 637 F. Supp. 2d 423, 436 (E.D. Tex. 2009). The court noted that Strietzel also discloses that its system can be "integrated into a wireless system or the Internet." Strietzel para.[0028]. Further, the court found that Figures 7-9 of Strietzel, which depict process flow diagrams used in conjunction with Strietzel's telecommu-

nications advertising means, illustrate algorithms. The court acknowledged that Sleevi's "implicit disclosure" of software was less clear than Strietzel's. *Ring Plus*, 637 F. Supp. 2d at 436. However, the court noted that Sleevi discloses that "stored program controlled digital switching is more often used in modern switching systems." Sleevi col.5 ll.51-54. The court also observed that Sleevi discloses a switching network and a control complex that can be "programmed" to perform certain functions. *Id.* col.6 ll.23-40, 50-59. Additionally, the court relied on testimony from Cingular's invalidity expert, who testified at trial that the references disclose software-based algorithms, and Robert Schaap (the attorney who prosecuted the '608 patent), who testified at deposition that the Strietzel and Sleevi systems would be operated at least in part by software. *Ring Plus*, 637 F. Supp. 2d at 437. From this evidence, the court found that a person of skill in the art would have understood both Strietzel and Sleevi to disclose software-based algorithms and that applicants' statement to the contrary in the Background was a misrepresentation. *Id.* at 436, 437.

Neither Strietzel nor Sleevi explicitly discloses software for operating a telephone system. However, as the district court observed, both references describe components that are generally understood by persons of skill in the art to be associated with computers and software. The references also disclose methods for operating a telephone system. Although the disclosure of software is certainly not express in either Strietzel or Sleevi, we cannot say that the court clearly erred in finding that a person of skill in the art would have understood the references to disclose software-based algorithms. Therefore, the court did not clearly err in finding that applicants' Background statement was a misrepresentation.

However, we agree with Ring Plus that the district court clearly erred in finding that applicants' statement in Amendment B was a misrepresentation. The court found that both Striezel and Sleevi disclose playing a sound presentation only when a called line is not busy. Contrary to the court's finding, however, Strietzel states unambiguously that "the busy tone can be replaced by one or more advertisements." Para.[0064]. Sleevi is altogether silent as to whether the status of the recipient's line affects system operation. The court did not cite to any portion of Sleevi to support its finding, relying instead on conclusory testimony from witnesses who also failed to identify any support for their positions in Sleevi. *Ring Plus*, 637 F. Supp. 2d at 438. Cingular points to Sleevi's disclosure that "[i]f the called address is busy, the calling customer line is connected to a busy tone generator" as supporting the court's finding. Sleevi col.5 ll.7-9. However, this portion of Sleevi describes the general operation of a prior art telephone system; it does not disclose generating a message only if the line is not busy. *See id.* fig.1, col.10 ll.38-41, col.12 ll.42-44. Sleevi does not disclose a telephone system that only presents messages when the line is not busy. The court clearly erred in finding that Striezel and Sleevi disclose playing a sound presentation only when a called line is not busy and, therefore, clearly erred in finding that applicants' statement in Amendment B was a misrepresentation.

Ring Plus also argues that the district court clearly erred in finding that applicants' statements were material. Because we find that applicants' statement in Amendment B was not a misrepresentation, we need only address the materiality of the Background statement. Information is material when "a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *Symantec Corp. v.*

*Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1297 (Fed. Cir. 2008). The district court found that the misrepresentation in the Background was not only material, but highly so. The court credited deposition testimony from Mr. Schaap that Strietzel and Sleevi were among the most relevant prior art references. The court also pointed to a patentability opinion in which Mr. Schaap informed applicants that he had found no prior art references "more pertinent" than Strietzel and Sleevi and that Sleevi, in particular, "fairly well precludes broad patent protection." J.A. 10423. In view of the evidence showing the particular relevance of Strietzel and Sleevi to the '608 patent, the court did not clearly err in finding that applicants' Background statement regarding the substance of those references was highly material.

Ring Plus argues that because Strietzel and Sleevi were before the examiner during prosecution, the Background statement was merely attorney argument and cannot be a material misrepresentation. Although an attorney is free to argue vigorously in favor of patentability without being subject to allegations of inequitable conduct, "the law prohibits genuine misrepresentations of material fact." *Rothman v. Target Corp.*, 556 F.3d 1310, 1328 (Fed. Cir. 2009). Because we uphold the district court's finding that applicants' Background statement was a misrepresentation, this statement was outside the bounds of permissible attorney argument. Ring Plus also argues that the examiner did not consider Strietzel and Sleevi to be important because he did not cite them during prosecution. However, the materiality standard is an objective one: the issue is what a reasonable examiner would have found important, not whether the reference in question was specifically considered during prosecution. Therefore, we conclude that the court did not clearly err in determining that applicants' statement in the Back-

ground that Sleevi and Strietzel propose "no algorithm or software . . . for operating the telephone system" was a material misrepresentation.

## 2. Intent

Cingular, as the party seeking to establish inequitable conduct, bore the burden of establishing by clear and convincing evidence that applicants specifically intended to deceive the PTO in making the misrepresentation in the Background. *Star Scientific*, 537 F.3d at 1365; *Larson Mfg.*, 559 F.3d at 1340. Although intent to deceive can be inferred from circumstantial evidence, the evidence must still be clear and convincing; "a showing of materiality alone does not give rise to a presumption of intent to deceive." *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1313 (Fed. Cir. 2008); *see also Kingsdown Med. Consultants v. Hollister, Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) (en banc in relevant part) (holding that even "'gross negligence' does not of itself justify an inference of intent to deceive"). Any inference of deceptive intent must be "the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Star Scientific*, 537 F.3d at 1366.

The district court found that Cingular made a sufficient showing of deceptive intent. The court acknowledged that applicants' disclosure of Sleevi and Striezel "is inconsistent with an intent to hide those references." *Ring Plus*, 637 F. Supp. 2d at 439. The court went on to find, however, that the statement in the Background that "Streitzel and Sleevi both propose hardware based systems, but no software to operate those systems" was made with an intent to deceive. Mr. Schaap, the prosecuting attorney, testified that he believed the Background statement to be accurate because he viewed Strietzel and Sleevi as ambiguous and insufficiently detailed as to

software. *Id.* at 439-40. The court found Mr. Schaap's belief "not credible" because he was a highly experienced patent prosecutor and because "even a cursory review" of Strietzel shows that the reference discloses software based algorithms. *Id.* at 440. Based on its view that the references clearly disclose software, the court found that applicants' purported belief in the truth of their representation was not plausible. From this evidence, the court concluded that "[t]he single most reasonable inference . . . is that the applicants intended to deceive." *Id.* at 440.

Ring Plus argues that the court clearly erred in finding that Cingular presented clear and convincing evidence of applicants' specific intent to deceive the PTO. We agree. The court premised its finding of intent almost entirely on its view that the references unambiguously disclose software. We disagree that the disclosure of software is so plain. Neither Strietzel nor Sleevi mentions software, and neither identifies any code or software mechanism for operating the disclosed systems. Moreover, there is no record evidence that one of skill in the art would consider the references to unambiguously disclose software. Although the references disclose isolated components that tend to be associated with computer operation, the references do not unambiguously disclose software for operating a telephone system.

Mr. Schaap testified that during prosecution he believed Strietzel and Sleevi related to hardware-based systems. In his view, Strietzel's "program processing means" could refer to hardware, and switching networks such as Sleevi's could be "programmed" mechanically or manually. *Ring Plus*, 637 F. Supp. 2d at 431. Though Mr. Schaap conceded at deposition that software-operated switches would, in practice, be used to implement the Strietzel and Sleevi inventions—primarily because mechanical switches "went out in the 1940s"—he nonethe-

less testified that neither reference discloses what the operating software is or how it might work. *Id.* at 437. For this reason, Mr. Schaap viewed his statement that "both [Strietzel and Sleevi] proposed hardware based systems, but no software to operate those systems" as accurate. *Id.* at 437 n.4. Cingular failed to present any evidence to rebut this testimony. "When examining intent to deceive, a court must weigh all the evidence, including evidence of good faith." *Akron Polymer Container Corp. v. Exxel Container*, 148 F.3d 1380, 1384 (Fed. Cir. 1998). "Whenever evidence proffered to show either materiality or intent is susceptible of multiple reasonable inferences, a district court clearly errs in overlooking one inference in favor of another equally reasonable inference." *Scanner Techs. Corp. v. Icos Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1376 (Fed. Cir. 2008).

Mr. Schaap's testimony gives rise to the inference that applicants believed that Strietzel and Sleevi did not disclose software for operating a telephone system. Based on the evidence of record, this inference is as reasonable as the court's inference of deceptive intent, particularly in view of the references' ambiguity as to operating software. Thus, the district court clearly erred in finding clear and convincing evidence of deceptive intent.

Cingular points to other evidence in the record, not cited by the district court, to establish intent. Cingular relies on applicants' statement in Amendment B that they examined Strietzel and Sleevi "very carefully." This statement is not indicative of intent. Reasonable minds could examine Strietzel and Sleevi and conclude, as applicants purportedly did, that the references do not disclose software for operating a telephone system. Cingular also relies on the prior art search report letter in which Mr. Schaap opined that Sleevi "fairly well precludes broad patent protection in the [relevant] field."

J.A. 10423. Although this statement supports the finding that the references are material, it does not establish intent to deceive with regard to the statement in the Background of the Invention. The prior art search letter does not reflect that Mr. Schaap understood these references to disclose software, only that he thought they precluded broad patent protection. Cingular notes that the applicants prepared, but decided not to file, an IDS that listed both Strietzel and Sleevi. Again, this evidence relates to materiality, but not intent. While it may have been relevant if this was a non-disclosure case, it is not; Sleevi and Striezel were disclosed in the application itself. Failure to file an IDS says nothing about whether Mr. Schaap believed that the references disclose software. Finally, Cingular asserts that Ring Plus's failure to call Mr. Schaap or the inventor of the '608 patent at trial supports an inference of intent. Although it is true that "if [a] party chooses to not call [witnesses within his control to produce], the fact finder may draw the inference that the testimony would be unfavorable," *see Brasseler, U.S.A. I., L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1385 n.7 (Fed. Cir. 2001), the district court drew no such inference here. We decline to do so in the first instance on appeal.

Because the district court clearly erred in finding that Cingular introduced clear and convincing evidence of deceptive intent, we reverse the court's judgment of unenforceability for inequitable conduct. *See Star Scientific*, 537 F.3d at 1367 ("If a threshold level of intent to deceive . . . is not established by clear and convincing evidence, the district court does not have any discretion to exercise and cannot hold the patent unenforceable regardless of the relative equities or how it might balance them.").

## B.  Claim Construction

The district court determined that the plain language of claims 1 and 9 shows that the claimed steps must be performed in a certain order.  The court held that the step of "determining whether the telephone line of the recipient telephone is busy" must be performed before the step of "terminating the telephone call and generating no sound presentation if the telephone line is busy and allowing for a sound presentation if the telephone line is not busy."  Further, the court held that the step of "allowing for a sound presentation" must be performed before the step of "play[ing] the introduced message to the caller or the recipient or both."  Because Cingular's Answer Tones service plays a sound presentation before it determines whether the recipient's line is busy, the court concluded that Answer Tones does not satisfy the required order of the steps.  The court therefore granted Cingular's motion for summary judgment of noninfringement.

On appeal, Ring Plus challenges the court's claim constructions.  Claim construction is a matter of law, and we review the court's claim construction without deference. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1451 (Fed. Cir. 1998) (en banc).  We read the claims "in view of the specification," which is "the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc).

Ring Plus does not contest the court's conclusion that the claim steps must be performed in order, that step 1c must be performed prior to step 1d.  Ring Plus Reply Br. at 26 ("Cingular unnecessarily presented argument about the order of the claim steps.  Ring Plus did not appeal the order of the claim steps.").  Claim 1 of the '608 patent reads as follows:

1. A software based algorithm for operation of a telephone system in which a generated sound presentation can replace or overlay a ring-back signal normally heard in a caller's telephone until such time as a recipient of a telephone call answers the telephone call, said algorithm comprising the steps of:

a) initiating those actions to identify the class of persons represented by the caller;

b) introducing a sound presentation to be generated over the telephone which replaces a portion of or all of the ring-back signal;

c) *determining whether the telephone line of the recipient telephone is busy*;

d) *terminating the telephone call and generating no sound presentation if the telephone line is busy and allowing for a sound presentation if the telephone line is not busy*;

e) initiating those actions to play the introduced message to the caller or the recipient or both; and

f) terminating the playing of the sound presentation upon answering of the phone call by the recipient.

'608 patent col.18 ll.22-42 (emphasis added).

Ring Plus argues that the claimed algorithm and method only apply during the ring-back signal period and the ringing signal period. Ring Plus argues that if the claim is limited to that time period, then "it simply does not matter what Defendants do or do not do before that period of time." Ring Plus argues that Cingular's Answer Tones service can infringe even if it plays a sound presentation prior to determining whether the line is busy

because, according to Ring Plus, that time period is not covered by the claims. To this end, Ring Plus argues that the district court erred in its construction of "allowing" and "sound presentation."

We conclude that the district court correctly construed these claim terms. The court construed "allowing" as "allow to begin." Ring Plus argues that the term should be construed as "allow to continue or to begin." Ring Plus's proposed construction conflicts with the required order of the claimed steps, which it does not appeal. The claimed algorithm (1c)) determines whether the line is busy, (1d)) allows a sound presentation if the line is not busy, and then (1e)) initiates the actions to play the message. The court held that the step of "allowing for" a sound presentation must be performed before the step of playing that presentation. Because a sound presentation cannot be "allowed to continue" before the presentation is first played, the required order of the steps necessarily indicates that "allowing" a sound presentation means allowing the presentation to *begin*. Indeed, if we construed "allowing" as Ring Plus proposes, the claims would recite the illogical sequence of allowing a sound presentation to continue before initiating the playing of that presentation. Step 1e) states "initiating those actions to play." If the sound presentation was playing in advance of or during the determination regarding whether the line is busy (step 1c)), then the "initiating those actions to play" required by 1e) would have already occurred. You cannot initiate the playing of the message as required by step 1e), if it has been playing all along. The court's construction is further supported by the specification, which consistently teaches that a sound presentation is not generated at all until after the algorithm determines that the recipient line is not busy. *Id.* col.6 l.62-col.7 l.2.

Thus, the court did not err in construing "allowing" as "allowing to begin."

Ring Plus also asserts that the court erred in construing "sound presentation." The court construed "sound presentation" as "an audible communication." Ring Plus argues that the term should be construed as "an audible communication during the usual ring-back period." Ring Plus defines this "ring-back period" as the time period during which a "'ringing signal' is sent to the called party to let them know they are being called, and the 'ring-back signal' is sent to the caller to let him know the called party's phone is ringing." Ring Plus Br. at 37. As Cingular points out, the effect of Ring Plus's construction would be to exclude from the definition of "sound presentation" any audible communication that is played before the "ring-back period." Under this construction, Answer Tones' failure to satisfy the required order of the steps would not be a defense to infringement because any tones played prior to the ring-back period (as defined by Ring Plus) would not qualify as "sound presentations." However, "sound presentation" is an ordinary term with a plain meaning. That meaning does not include any time period limitation. Ring Plus fails to identify any portion of the specification that limits the claimed sound presentation to an audible communication played during a specific time period. The court did not err in construing "sound presentation" consistent with its plain meaning, "an audible communication."

Ring Plus's arguments for reversing the court's entry of summary judgment of noninfringement turn on our acceptance of its claim construction arguments. Because we hold that the court did not err in construing the disputed claim terms, no basis exists for disturbing the court's judgment of noninfringement.

C.  Disqualification of Counsel

Ring Plus also argues that Cingular's counsel should have been disqualified for allegedly improper ex parte party communications.  We review the district court's decision regarding attorney disqualification under the law of the regional circuit, here the Fifth Circuit.  *See Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1357 (Fed. Cir. 2009).  In considering a disqualification motion, the Fifth Circuit "view[s] the [applicable rules of professional conduct] in light of the litigant's rights and the public interest, considering whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001) (quotation omitted).  We review the court's grant or denial of a motion to disqualify counsel for abuse of discretion.  *Kennedy v. MindPrint (In re ProEducation Int'l, Inc.)*, 587 F.3d 296, 299 (5th Cir. 2009).  In applying this standard, "we will review fact-findings for clear error, and we will perform a . . . de novo review, of the [district] court's application of the relevant rules of attorney conduct." *Id.* (internal quotation omitted).

On April 12, 2007, a man named Tom Garretson sent identical emails to a number of Cingular's attorneys. Ring Plus asserts that Mr. Garretson was employed as a Ring Plus director and officer at the time he sent the emails.  The emails, which were sent from Mr. Garretson's personal address, informed Cingular that Mr. Garretson had "been involved with the Ring Plus/['608] patent since the beginning" and that he "possess[ed] a great deal of information that I would like to share…patent strengths, weaknesses, Ring Plus legal strategy, claim

defense strategy, etc." J.A. 5591. The next day, Cingular's counsel Doug Kubehl called lead counsel for Ring Plus, Frederic Douglas, and asked whether Mr. Garretson was affiliated with Ring Plus. Mr. Kubehl claims he was told that Mr. Garretson had never been affiliated with Ring Plus; Mr. Douglas denies saying this. It is undisputed, however, that Mr. Kubehl sent Mr. Douglas a letter on April 13, 2007, to memorialize his understanding that "[b]ased on your representations today, I understand that . . . Tom Garretson is [not] now or ever has been affiliated with [Ring Plus]." J.A. 10804. Ring Plus never responded to this letter.

A few days later, Mr. Kubehl responded to Mr. Garretson's email. Mr. Kubehl confirmed his representation of Cingular and proposed scheduling a deposition to obtain any factual information Mr. Garretson might have regarding the case. In a follow-up email, Mr. Kubehl instructed Mr. Garretson not to disclose any Ring Plus privileged information, including any knowledge of Ring Plus's legal strategy. Cingular's counsel contacted Mr. Douglas again in June of 2007 to ask whether counsel for Ring Plus would accept service of Mr. Garretson's subpoena for deposition; a different Ring Plus attorney declined, asserting that they did not represent Mr. Garretson. Cingular did not communicate with Mr. Garretson again until his deposition.

Ring Plus moved to disqualify Cingular's counsel, alleging that Cingular violated Texas Disciplinary Rule of Professional Conduct 4.02 (Rule 4.02) and the American Bar Association Model Rule of Professional Conduct 4.2 (Rule 4.2) by communicating with a Ring Plus director without the knowledge or consent of Ring Plus's counsel. Rule 4.02 prohibits communication with any person "the lawyer knows to be represented by another lawyer regarding that subject"; Rule 4.2 contains a similar prohibition.

The district court found that Cingular's counsel had no actual knowledge that Mr. Garretson was affiliated with Ring Plus. After applying the *Horaist* factors, the court concluded that Cingular's conduct did not violate the applicable rules of professional conduct and denied Ring Plus's motion.

The court did not clearly err in finding that Cingular's counsel had no knowledge of Mr. Garretson's affiliation with Ring Plus. Ring Plus argues that Mr. Garretson's initial emails showed that he was affiliated with Ring Plus. However, nothing in the email indicates a current affiliation with Ring Plus—indeed, the fact that Mr. Garretson was offering information adverse to Ring Plus would suggest the contrary. Further, Cingular's counsel sought to confirm the lack of affiliation before it responded to Mr. Garretson and put Ring Plus on notice, in writing, of his belief that Mr. Garretson was "[not] now or ever has been affiliated" with Ring Plus. Ring Plus failed to respond to this letter.

Ring Plus next argues that Cingular had notice of Mr. Garretson's affiliation based on a privilege log produced in March 2007, which lists a communication between Mr. Garretson and a Ring Plus attorney. As the court pointed out, however, the communication occurred in April 2006, nearly one year before Ring Plus produced the log. Although the communication could tend to show a prior affiliation between Mr. Garretson and Ring Plus, it does not indicate any current relationship, particularly given Ring Plus's failure to acknowledge any such relationship in response to Cingular's inquiries.

Ring Plus also argues that the court misapplied the applicable rules of professional conduct by failing to properly evaluate the *Horaist* factors. The court found that the actions of Cingular's counsel did not raise any

appearance of impropriety because Cingular's counsel proceeded with caution in communicating with Mr. Garretson by instructing him not to disclose any privileged information. It also found that there was no danger of a "specific impropriety" because, as became apparent at deposition, Mr. Garretson did not possess any relevant information. Further, the court found a low risk of public suspicion because the communications between Cingular's counsel and Mr. Garretson consisted almost solely of attempts to schedule his deposition. None of these fact findings are clearly erroneous. Therefore, the court correctly applied the *Horaist* factors in determining whether Cingular's actions violated the applicable rules of professional conduct and did not abuse its discretion in denying Ring Plus's motion to disqualify counsel.

### III.    CONCLUSION

Because the district court clearly erred in finding that applicants acted with specific intent to deceive the PTO, we reverse the court's judgment of unenforceability for inequitable conduct. Because the court did not err in construing the disputed claim terms, we affirm the court's entry of summary judgment of noninfringement. We also affirm the court's denial of Ring Plus's motion to disqualify counsel.

**REVERSED-IN-PART and AFFIRMED-IN-PART**